147 N.J. Super. 316 (1977)
371 A.2d 308
ELIZABETH BURG AND NEAL BURG, HER HUSBAND, PLAINTIFFS-APPELLANTS,
v.
STATE OF NEW JERSEY, ANN KLEIN, COMMISSIONER OF N.J. INSTITUTIONS AND AGENCIES, WILLIAM FAUVER, DIRECTOR OF DIVISION OF CORRECTION AND PAROLE, DEPARTMENT OF INSTITUTIONS AND AGENCIES, VINCENT J. REGAN, FORMER SUPERINTENDENT, NEW JERSEY STATE PRISON, LEESBURG, N.J. JOHN DOE, TRUE NAME BEING UNKNOWN, AGENT OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted January 4, 1977.
Decided February 24, 1977.
*318 Before Judges MATTHEWS, SEIDMAN and HORN.
Mr. Carl D. Poplar, attorney for appellants.
Mr. William F. Hyland, Attorney General of New Jersey, attorney for respondents (Ms. Erminie L. Conley, Deputy Attorney General, of counsel; Mr. Thomas D. Monte, Jr., Deputy Attorney General, on the brief).
The opinion of the court was delivered by SEIDMAN, J.A.D.
On November 16, 1973, while walking home from the Port Authority station in Westmont, plaintiff was assaulted and struck on the head with a blunt instrument wielded by William Boland, a convicted felon serving a life term at Leesburg State Prison for a murder committed in 1961. He was apprehended and subsequently entered pleas of guilty to indictments charging him not only with this offense but also with assaults upon and robberies of other persons during the same month.
It is not disputed that at the time of these incidents Boland was on vocational, noncustodial release pursuant to N.J.S.A. 30:4-91.3 and the implementing rules and regulations promulgated by the Commissioner of the Department of Institutions and Agencies (N.J.A.C. 10:35-52.1 et seq.) Under this program he was permitted to attend classes daily at Glassboro State College without supervision and to use an automobile for transportation between the prison and the college.
*319 After complying with the notice of claim provision of the Tort Claims Act, N.J.S.A. 59:8-1 et seq., Mrs. Burg and her husband filed this lawsuit for compensatory and punitive damages upon the expiration of the statutory six-month waiting period (N.J.S.A. 59:8-8). Named as defendants were the State of New Jersey, the Commissioner of the Department of Institutions and Agencies, the then Superintendent of the State Prison at Leesburg, and "John Doe" as agent of the State of New Jersey. Plaintiffs charged them with negligence in (1) permitting Boland to be at liberty without supervision and control and in alleged violation of applicable rules and regulations and standards of penology; (2) failing adequately to examine Boland's mental, psychiatric, psychological and emotional stability; (3) failing properly to safeguard members of the public, and (4) acting in willful and wanton disregard of the rights of plaintiff.
Defendants moved for an order dismissing the complaint for failure to state a claim upon which relief could be granted. Plaintiffs filed a cross-motion for discovery or, alternatively, for the taking of depositions. The trial judge who originally heard the motions died before announcing his decision. The matter was later reargued before another judge who, in a letter opinion, after noting that the issue involved was one of first impression in this State, held that plaintiffs had no cause of action under the Tort Claims Act. Relying largely on California decisions, he reached the conclusion that all acts of public entities or public employees within the ambit of release procedures, whether of a discretionary or a ministerial nature, were immunized from tort liability. This appeal is from the judgment dismissing the complaint.
It is thoroughly settled that on a motion challenging the legal sufficiency of a complaint, R. 4:6-2(e), "the plaintiff is entitled to a liberal interpretation of its contents and to the benefits of all its allegations and the most favorable inferences which may be reasonably drawn from *320 them." Rappaport v. Nichols, 31 N.J. 188, 193 (1959); see also Bonnett v. State, 126 N.J. Super. 239, 242 (App. Div. 1974). Thus, the issue raised on this appeal is, essentially, whether on the facts alleged, accepting them as true, a cause of action arose against those defendants cognizable under the Tort Claims Act.
Plaintiffs suggest that the statute was designed to create liability rather than immunity. They are mistaken. We said in English v. Newark Housing Auth., 138 N.J. Super. 425, 428 (App. Div. 1976), that the language of the legislation made it clear that the basic legislative premise was to re-establish immunity for all governmental bodies within its definition of "public entity." Immunity, we emphasized, was all-inclusive within that definition except as otherwise provided by the act. See N.J.S.A. 59:2-1. In the comment appended to this section of the statute, taken from the Report of the Attorney General's Task Force on Sovereign Immunity (May 1972), the observation appears that the Supreme Court had developed the analytical approach that courts "ought not to be * * * asking why immunity should not apply in a given situation but rather * * * asking whether there is any reason why it should apply." B.W. King, Inc. v. West New York, 49 N.J. 318, 325 (1967). Under the Tort Claims Act, according to the comment, "the approach should be whether an immunity applies and if not, should liability attach." The hope is expressed "that in utilizing this approach the courts will exercise restraint in the acceptance of novel causes of action against public entities."
It is within the framework of this expressed legislative design that we must test the sufficiency of the complaint in this case.
Boland was released under N.J.S.A. 30:4-91.3, captioned, "Extension of limits of place of confinement," which, to the extent pertinent here, provides as follows:
The Commissioner [of the Department of Institutions and Agencies] or his duly authorized agent or agents may extend the limits *321 of the place of confinement of a prisoner as to whom there is reasonable cause to believe he will honor his trust, by authorizing him, under prescribed conditions, to

* * * * * * * *
(b) * * * participate in a training or educational program in the community on a voluntary basis while continuing as a prisoner of the institution or facility to which he is committed.
This extension of the "limits of the place of confinement of a prisoner" is designated in the implementing regulations as "work release." See N.J.A.C. 10:35-52.1 et seq. N.J.A.C. 10:35-52.6 provides for the screening of all referrals, recommendations and requests for inmates to go on work release by the classification committee of the institution, which makes a determination whether to approve or disapprove an inmate in accordance with the eligibility standards set forth in N.J.A.C. 10:35-52.2. The latter section specifies, among other things, that where the commitment offense was the first serious offense against the person involving the use or carrying of a weapon, the offender is eligible for the program "when in the judgment of the classification committee there is no likelihood of reoccurrence." It excludes from the program inmates with serious emotional or personality defects with histories of violent or assaultive behavior, or of sexual assault, but provision is made for the consideration of work release, under limited circumstances, for emotionally or mentally handicapped inmates who are not dangerous to others, "when it appears that community employment can aid their post release adjustment."
Plaintiffs argue that the allegations of the complaint permit inferences of "derelictions of duty and violations of law" on the part of state employees in permitting Boland "to roam in the community without supervision 15 hours each and every day," and that any claim of immunity on the facts of this case would be unfair and unjust. They charge that Boland "had a well defined and obvious history of emotional, psychological and psychiatric problems," and that the murder conviction "clearly is a history of violent behavior." While conceding that the State would not be liable for certain *322 acts of discretion, they maintain that the basis for their lawsuit is "the wrongful conduct on the part of the State in disregarding, negligently and intentionally, the responsibilities mandated by statutes and Rules and Regulations promulgated thereunder." They assert that there was no discretion to release Boland and that "he should not have been permitted to roam unsupervised in the community as the clear and dangerous threat that he was." In essence, plaintiffs seek to charge defendants with that which necessarily must be characterized either as an improper exercise of discretion by prison personnel, or as negligent ministerial acts on their part. They argue, in effect, that the release of Boland was a low-level discretionary or ministerial act, so that liability should attach under N.J.S.A. 59:2-2(a), which imposes liability upon a public entity for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same effect as a private individual in like circumstances.
But plaintiffs are confronted at once with N.J.S.A. 59:5-2, which provides in pertinent part that
Neither a public entity nor a public employee is liable for:
a. An injury resulting from the parole or release of a prisoner or from the terms and conditions of his parole or release or from the revocation of his parole or release
b. any injury caused by:
(1) an escaping or escaped prisoner, * * *
The legislative intent underlying subsection (a) is that it involves "a particular type of discretionary activity which should not be subject to threat of tort liability." Subsection (b) "reflects the judgment that governmental liability should not be extended beyond reasonable limits." See Comment-1972, appended to N.J.S.A. 59:5-2.
Since our Tort Claims Act is modeled after the comparable California statute, Cal. Gov't Code § 810 et seq., we may profitably look for guidance to the interpretative decisions on the subject in the courts of that state, as the trial judge did. Cf. Setrin v. Glassboro State College, 136 N.J. Super. 329, 334 (App. Div. 1975).
*323 In the case of State v. Superior Court, for County of Orange, 37 Cal. App.3d 1023, 112 Cal. Rptr. 706 (D. Ct. App. 1974), the issue involved was the liability of the state and various of its agencies and employees for the arson of a building allegedly committed by prisoners who were released from custody and permitted to enter into the surrounding community under a rehabilitative program promulgated by the institution where they were confined. The cause of action asserted was that the state was negligent in the application of the rules and regulations of the institution and that the inmates were released despite their ineligibility for the program.
The state claimed immunity under a section of its tort claims statute which declared that neither a public entity nor a public employee was liable for "any injury resulting from determining whether to * * * release a prisoner or from determining the terms and conditions of his * * * release * * *." The responding argument was that the state's neglect was not in the realm of discretion, but rather in the failure to perform the ministerial acts of applying already established rules and regulations. However, relying upon County of Sacramento v. Superior Court, 8 Cal.3d 479, 105 Cal. Rptr. 374, 503 P.2d 1382 (Sup. Ct. 1973), as illustrative of an "unwillingness to create sharp (but essentially artificial) distinctions between ministerial and discretionary acts," the court held that all acts within the ambit of release procedures were immunized from tort liability under the statute.
The case of County of Sacramento v. Superior Court, supra, presented the question of whether a wrongful death action could be maintained against the county where the decedent had been shot and killed by prisoners who had escaped from jail and were in the process of burglarizing the decedent's residence at the time. The allegation was that the county was negligent in classifying, supervising and detaining the prisoners, resulting in their escape, and in failing to pursue the prisoners and to warn local residents of their *324 escape. Immunity was claimed under the provision in the statute excluding liability for any injury caused by an escaping or escaped prisoners. The court said:
As hereinabove indicated, real parties in interest, although recognizing that there is immunity for discretionary acts of petitioner's employees (§ 820.2), contend that there is no immunity with respect to ministerial acts and that the alleged acts of petitioner's employees in leaving the jail doors unlocked were ministerial in nature. Ministerial implementation of correctional programs, however, can hardly, in any consideration of the imposition of tort liability, be isolated from discretionary judgments made in adopting such programs. * * * In any event, the Legislature's determination to make the immunity with respect to injury caused by an escaped prisoner an absolute one, thus encompassing both discretionary acts or omissions and ministerial acts or omissions, seems entirely justified when one reflects that prison and ministrators would of necessity be inhibited in maintaining rehabilitative programs allowing liberal prisoner freedom if the result is to increase greatly the risk of escape, and the entity is to be held responsible to third parties for injuries caused by the escaped prisoner.
Plaintiffs place considerable reliance upon Wuethrich v. Delia, 134 N.J. Super. 400 (Law Div. 1975), in which the trial judge held that N.J.S.A. 59:2-3 protected the State only from high-level discretionary acts, and that where the police allegedly ignored warnings that someone was menacing certain persons with a firearm, one of whom was shot and killed by the assailant, liability for the death could be imposed pursuant to N.J.S.A. 59:2-2, since the police failed to act in a manner commensurate with their ministerial or low-level discretionary duty to investigate. Wuethrich is not binding upon us; but, in any event, it is distinguishable. Here, N.J.S.A. 59:5-2 explicitly provides for immunity in specific cases; namely, among others, injury resulting from the release of a prisoner or caused by an escaped prisoner. The provisions of N.J.S.A. 59:2-2 and 59:2-3 are general in nature. An application of their general guidelines here would be contrary to the legislative intent underlying N.J.S.A. 59:5-2, and to the established rule that a specific statutory provision dealing with a particular subject *325 will prevail over a general provision. State, by Highway Com'r v. Dilley, 48 N.J. 383, 387 (1967).
We conclude that since the facts alleged by plaintiffs amount essentially only to an assertion that Boland should not have been permitted to participate in the work release program, liability should not attach for any injury resulting from his release. It is clear that N.J.S.A. 59:5-2 (a) expressly excludes such a claim as the basis of a cause of action. Cf. Setrin v. Glassboro State College, supra, 136 N.J. Super. at 335.
Beyond this, however, it is to be noted that N.J.S.A. 59:5-2(b) further immunizes public entities and public employees from any injury caused by an escaped prisoner. Under N.J.S.A. 30:4-91.5, the willful failure of a prisoner to remain within the extended limits of his confinement is deemed an escape. Plaintiffs recognize the existence of this additional statutory bar to their claimed cause of action, but they attempt to circumvent it by the argument that since Boland was permitted "to be very far away from his prison facility for such a protracted period of time with such unsupervised mobility in violation of the Rules, Regulations and Standards promulgated pursuant to statute at a minimum infers consent and permission for Mr. Boland to have been where he was at the time that he was." We perceive no merit in this argument.
We have carefully considered the remaining arguments advanced by plaintiffs and are not persuaded that any of them requires a different result in this case.
We are satisfied that the complaint, viewed most favorably to plaintiffs, failed to state a claim upon which relief could be granted. The trial judge correctly dismissed it.
Affirmed.