JEAN VANCHIERI AND MICHAEL VANCHIERI, HER HUSBAND, PLAINTIFFS-APPELLANTS, v. NEW JERSEY SPORTS AND EXPOSITION AUTHORITY, JOHN DOE AND JANE DOE, FICTITIOUS NAMES, DEFENDANTS, AND WACKENHUT COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued February 3, 1986—Decided September 30, 1986.

82

*Cathy Ann Kenny* argued the cause for appellants.

*Stephen J. Spudic* argued the cause for respondent (*Britt & Riehl,* attorneys).

*Jonathan H. Rosenbluth* submitted a letter in lieu of brief on behalf of New Jersey Sports and Exposition Authority (*Zucker, Facher and Zucker,* attorneys).

The opinion of the Court was delivered by

CLIFFORD, J.

The New Jersey Tort Claims Act, *N.J.S.A.* 59:1–1 to :12–3, provides public entities (*N.J.S.A.* 59:2–1 to –10) and public employees (*N.J.S.A.* 59:3–1 to –14) with broad immunity from suit in tort. In this case we must decide whether that immunity extends to an independent contractor, and, if it does, under what circumstances.

Plaintiffs sued to recover on account of personal injuries sustained by plaintiff Jean Vanchieri at the Meadowlands Sports Complex. The trial court granted summary judgment in favor of defendants, New Jersey Sports and Exposition Authority (NJSEA), the public operator of the Meadowlands Sports Complex, and Wackenhut Company, an independent contractor engaged by NJSEA to provide security services. The Appellate Division affirmed, 201 *N.J.Super.* 34 (1985). We granted certification, 102 *N.J.* 329 (1985), limited to the issue of Wackenhut Company's right to summary judgment. We now reverse the judgment below as to that defendant.

I

Plaintiffs, Jean and Michael Vanchieri, accompanied by their friends Shirley and Robert Sassi, attended a pre-season football

game at Giants Stadium in the Meadowlands Sports Complex on September 4, 1982. The two couples waited in their seats for approximately fifteen minutes after the game, then started to leave the stadium. While crossing a hallway or turning to cross a hallway, Jean Vanchieri was knocked down by one of three young men who were roughhousing in or near the exit area. Ms. Vanchieri received emergency treatment at the Stadium and thereafter at two hospitals. Her injury, a subcapital displaced fracture of the left hip, eventually required insertion of a prosthetic replacement.

Plaintiffs brought suit against NJSEA, Wackenhut Company, and various fictional defendants. As to Wackenhut, plaintiffs' complaint charged defendant with "the responsibility for maintaining security at Giant Stadium and providing uniformed guards on the premises to accomplish security and control of those on the premises," and alleged that "as a result of Wackenhut's negligence in failing to provide proper security and/or supervision," plaintiff Jean Vanchieri was injured. Although Wackenhut's answer did not plead immunity under the Tort Claims Act, Wackenhut followed NJSEA in moving for summary judgment, contending that it was "entitled to the same immunity [as that] afforded to the Authority." For its part the Authority claimed immunity under *N.J.S.A.* 59:2–7 (public entity not liable for failure to provide supervision of public recreational facilities, but this immunity does not exonerate public entity from liability for failure to protect against "dangerous condition") and under *N.J.S.A.* 59:5–4 from liability "for failure to provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service."

The trial court granted summary judgment to both defendants, relying principally on *Rodriguez v. New Jersey Sports and Exposition Auth.*, 193 *N.J.Super.* 39 (App.Div.1983), certif. den., 96 *N.J.* 291 (1984). In that case, Crispin Rodriguez was injured in the parking lot outside the Meadowlands Race Track. The Appellate Division affirmed the trial court's dismis-

sal of Rodriguez's complaint against NJSEA and Pinkerton's Inc., an independent contractor that provided security services. 193 *N.J.Super.* at 47. The trial court in this case found no basis for distinguishing *Rodriguez*, and therefore granted defendants' motions. The Appellate Division held that "Wackenhut, as a private security agency under contract with the Authority, is within the immunity provisions of the New Jersey Tort Claims Act." 201 *N.J.Super.* at 43. This opinion addresses that holding of the court below.

## II

The Tort Claims Act was enacted in response to a perception that although the common-law doctrine of complete sovereign immunity was inherently unfair, at the same time some immunity was necessary.

> The Legislature recognizes the inherently unfair and inequitable results which occur in the strict application of the traditional doctrine of sovereign immunity. On the other hand the Legislature recognizes that while a private entrepreneur may readily be held liable for negligence within the chosen ambit of his activity, the area within which government has the power to act for the public good is almost without limit and therefore government should not have the duty to do everything that might be done. [*N.J.S.A.* 59:1–2.]

NJSEA is a public entity within the meaning of the Tort Claims Act. *Blazer Corp. v. NJSEA*, 195 *N.J.Super.* 542, 547 (Law Div.1984), aff'd, 199 *N.J.Super.* 107 (App.Div.1985). " 'Public entity' includes the State, and any county, municipality, district, public authority, public agency, and any other political subdivision or public body in the State." *N.J.S.A.* 59:1–3. A public employee, also entitled to statutory immunity, is an employee of a public entity. Although the term "employee" is defined broadly, independent contractors are expressly excluded from its scope. *Id.* Wackenhut is not entitled, under the language of the Act, to immunity from tort claims. Nonetheless, independent contractors in general, and Wackenhut Company in particular, do, under well-recognized principles, share to a limited extent the immunity of public entities with whom they contract.

■ When a public entity provides plans and specifications to an independent contractor, the public contractor will not be held liable for work performed in accordance with those plans and specifications. This rule rests on two important principles. First, the immunity of the entity itself would become meaningless if contractors complying with its design were liable in tort for defects in that design. *Cobb v. Waddington,* 154 *N.J.Super.* 11, 18 (App.Div.1977), certif. den., 76 *N.J.* 235 (1978); *Sanner v. Ford Motor Co.,* 144 *N.J.Super.* 1, 9 (Law Div.1976), aff'd, 154 *N.J.Super.* 407 (App.Div.1977), certif. den., 75 *N.J.* 616 (1978). If contractors never shared government immunity, their costs of doing business would be higher and those higher costs would be passed on to the government entities hiring the contractors. In respect of costs, therefore, the effect would be nearly the same as if the public entity were liable itself.

■ The second principle underlying public contractor immunity concerns notions of fairness. An independent contractor bound to specifications that are provided by a public entity and over which it has no control is not responsible for defects in those specifications. It would be fundamentally unfair to hold a contractor liable in that instance for injury caused by defective plans, at least in the absence of a blatant, obvious danger that the contractor should have brought to the attention of the public entity. *Lydecker v. Freeholders of Passaic,* 19 *N.J.L.* 622, 626–27 (E. & A.1912); *see also* Comment, "The Government Contractor Defense: An Overview," 27 *How.L.Rev.* 275 (1984) (The immunity of the contractor "is based on public policy against forcing a government contractor to shoulder alone the entire burden of liability for an injury which occurred, not because of his own wrongdoing, but merely because of his innocent compliance with the government's specifications.").

### III

■ It is useful to recall that for tort liability purposes, public entities are expressly contrasted with "private entrepre-

neur[s]," who "may readily be held liable for negligence within the chosen ambit of [their] activity." *N.J.S.A.* 59:1–2; *Fitzgerald v. Palmer,* 47 *N.J.* 106, 109 (1966). Balanced against the policies favoring immunity for contractors is a legitimate concern that injured plaintiffs not be unduly denied compensation for their injuries. This concern requires careful scrutiny of contractors' claims to immunity, lest immunity be granted too freely and in the absence of circumstances giving rise to its justification. Wackenhut should not be immune from suit by the mere fortuity that it contracted with NJSEA rather than with a private entity. Moreover, public contractors' derivative immunity under the Tort Claims Act is an affirmative defense. A party seeking this immunity bears not only the burden of pleading it but also the burden of persuasion. *See Kolitch v. Lindedahl,* 100 *N.J.* 485, 497 (1985); *Ellison v. Housing Auth. of S. Amboy,* 162 *N.J.Super.* 347, 351 (App.Div.1978).

In this case defendant Wackenhut Company has not established that the NJSEA provided plans and specifications for the deployment of security personnel for the pre-season game at which Jean Vanchieri was injured. Wackenhut did submit its contract with the Authority. The Appellate Division found that

the contract between Wackenhut and the Authority requires Wackenhut to provide permanent posts and guards as "shall be fixed by the Authority and Wackenhut," but the Authority has the right to require specific assignments or transfers from one post to another or to require the establishment or change of hours. The Authority also has the right to specify the number of employees necessary for each event at the track, stadium, arena and future facilities. The Authority has the right to approve or disapprove of any personnel and to make policy decisions regarding the security functions; it has the right to determine guard posts, the number of people to be employed, site security, track, stadium, arena and future facilities' security, and the type and amount of equipment to be used. [201 *N.J.Super.* at 44.]

The contract shows that Authority had the *power* to specify how security functions were to be carried out. The record is barren of any proof, however, that NJSEA exercised that power for the game on September 4, 1982. And of course, absent evidence of those plans and specifications, Wackenhut

could not have shown that it complied with them. It was not for plaintiffs to prove these essential elements of Wackenhut's affirmative defense, but for Wackenhut to do so. In the absence of those proofs, the trial court erred in granting summary judgment for Wackenhut.

■ Whether NJSEA's immunity is viewed as stemming from its general immunity for the exercise of discretion, *N.J. S.A.* 59:2–3, or its more specific immunity for failure to provide sufficient police services, *N.J.S.A.* 59:5–4, the elements of Wackenhut's defense are identical.[1] If it can show that NJSEA exercised its contractual right to make necessary, discretionary decisions concerning the September 4, 1982, game, including specifying the number of guards to be employed for the game, their posts, and the type and amount of equipment to be used, and if Wackenhut further establishes that it did not deviate from those specifications, then Wackenhut will have proven its right to share any statutory immunity from liability to which NJSEA is entitled in this suit. On the other hand, if Wackenhut cannot prove these elements, the defense of derivative sovereign immunity will not apply, and Wackenhut will be amenable to suit under ordinary negligence principles. In that event plaintiffs may proceed in their attempt to establish that Wackenhut was negligent and that its negligence proximately caused Jean Vanchieri's injuries. We note finally that in a case such as this, where plaintiffs must rely on defendant's witnesses to establish their case, summary judgment is often inappropriate. *Ruvolo v. American Casualty Co.*, 39 *N.J.* 490, 500 (1963).

---

[1] Our discussion should not be read to constitute a holding that any particular immunity in fact applies in this case. Specifically, we do not hold that the facts asserted invite invocation of the "police protection" immunity of *N.J.S.A.* 59:5–4, plaintiffs having argued for a distinction between "police protection" and "crowd control." We need not address that issue in view of the result we reach on the narrow question presented.

## IV

The judgment below is reversed as to defendant Wackenhut Company and the cause is remanded for further proceedings consistent with this opinion.

*For reversal and remandment* —Justices HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—5.

*For affirmance*—None.