MARIE R. TROTH, INDIVIDUALLY, AS ADMINISTRATRIX OF THE ESTATE OF FLOYD L. TROTH, AND AS ADMINISTRATRIX AD PROSEQUENDUM FOR THE HEIRS-AT-LAW OF FLOYD L. TROTH, PLAINTIFF–RESPONDENT, v. STATE OF NEW JERSEY, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 15, 1987—Decided February 5, 1988.

Before Judges SHEBELL, GAYNOR and ARNOLD M. STEIN.

*Valerie L. Egar*, Deputy Attorney General, argued the cause for appellant. (*W. Cary Edwards*, Attorney General of New Jersey, attorney; *James J. Ciancia*, Assistant Attorney General, of counsel; *Valerie L. Egar*, on the brief).

*Gary D. Thompson* argued the cause for respondent (*Cresse, Carr, Peaslee and Thompson*, attorneys; *Gary D. Thompson*, on the brief).

The opinion of the court was delivered by

GAYNOR, J.A.D.

The applicability of *N.J.S.A.* 59:4–8 to a boating accident on a State-owned lake is the determinative issue presented in this appeal.

By leave granted, the State appeals from the denial of its summary judgment motion for the dismissal of this personal injury and wrongful death action arising from an accident which occurred while plaintiff and decedent were fishing in a small motorboat on State-owned Union Lake in Millville. Union Lake is approximately 850 acres in area being part of a tract of 4,300 acres acquired by the State of New Jersey in 1982 and used by the Division of Fish, Game and Wildlife as a wildlife management area.

■ The State's motion was founded upon the asserted immunity afforded under *N.J.S.A.* 59:4–8 or the Landowner's Liability Act, *N.J.S.A.* 2A:42A–2, *et seq.* In denying the motion, the trial judge concluded that the immunity provided by the latter statute was not applicable as the area in question did not constitute rural or semirural unimproved lands within the meaning of the Act, and also that a summary disposition of plaintiffs' complaint on the basis of the State's statutory immunity under *N.J.S.A.* 59:4–8 for an injury caused by a condition of unimproved public property was inappropriate as material issues of fact were presented as to whether the causative condition was a dangerous hazard. We make no determination with respect to the applicability of the Landowner's Liability Act, as it is our view that the immunity provided by *N.J.S.A.* 59:4–8 bars, as a matter of law, the imposition of liability upon the State for the consequences of the accident giving rise to this action.

On June 22, 1983 while plaintiff, Marie R. Troth, and her husband, Floyd L. Troth, were trolling on Union Lake in their small boat, their fishing lures caught on some undergrowth. In attempting to free the line, the boat was drawn by the current toward the dam at one end of the lake. Realizing that they were getting too close to the dam and that the trolling motor was inadequate to withstand the current, they tried unsuccessfully to start a larger motor on the boat. As the boat passed over the dam's spillway, Mrs. Troth attempted to hold the boat back by grasping a submerged wire rope which stretched across the spillway. She was unable to do so and the boat was swept over the dam. Mr. Troth died as result of the injuries sustained in this tragic accident and Mrs. Troth suffered extensive permanent injuries.

In their complaint against the State of New Jersey, County of Cumberland and City of Millville, plaintiffs alleged that the dangerous condition of Union Lake and its dam permitted the boat to be swept over the dam and thus was causally related to the injuries and death which were thereby sustained. Addition-

al claims advanced in opposing the State's motion were that State employees were negligent in failing to properly supervise the dam, in failing to take notice of the fact that the wire rope barrier across the spillway was submerged by the rising water level and in failing to notice that the increased water current rendered the lake in the vicinity of the dam unmanageable for small boats. Assertedly, had there been proper supervision and maintenance of the dam and the wire rope barrier, appropriate action could have been taken which would have prevented the accident. In support of this negligent supervision argument, plaintiffs pointed to the routine daily patrols of the lake by conservation officers, during which the spillway was inspected and water levels monitored, and the conceded purpose of the cable across the spillway being to warn or prevent boats from going over the spillway.

In ruling that the State was not entitled to a summary judgment based upon the statutory immunity, the trial judge reasoned:

> [C]learly I think there's sufficient facts that have to be developed at trial before a finder of fact can conclude that this was not a dangerous condition. The certifications don't demonstrate clearly what is the purpose of the wire rope. They don't demonstrate necessarily the inspections of that wire rope. I realize there are two people going out inspecting twice a day, but are they cognizant of the wire rope? Are they cognizant of what it's used for? Are they cognizant that they have an obligation to observe if they know it's used to prevent people or boats from going over? And are they cognizant of the fact that they should be aware that under high tide conditions it's submerged and the expected user wouldn't be able to see it or perhaps grab hold of it. I think that's all a series of questions which have to be developed from the testimony. And, therefore, there are material issues of fact on that issue.

On this appeal, the State argues, as it did before the trial judge, that plaintiffs' action is barred by the absolute immunity provided by *N.J.S.A.* 59:4–8 to public entities for injuries caused by a condition of unimproved public property. As Union Lake is part of a large tract used as a wildlife management area and was acquired by the State under the Green Acres Program specifically for recreation and conservation purposes, assertedly the lake area, including the dam, comes within the statutory

classification of "unimproved public property." In disputing this contention, plaintiffs urge that the dam is an artificially man-made improvement and thus the lake premises may not be considered as unimproved property cloaked with the claimed statutory immunity.

*N.J.S.A.* 59:4–8 provides:

Neither a public entity nor a public employee is liable for an injury caused by a condition of any unimproved public property, including but not limited to any natural condition of any lake, stream, bay, river or beach.

We learn from the comment to this statute and the related provision, *N.J.S.A.* 59:4–9, that the underlying rationale for the absolute immunity therein provided is to permit public use of such property in its natural condition without subjecting public entities to the burdens of putting the property in a safe condition or the expense of defending claims for injuries arising from the use thereof. *Report of the Attorney General's Task Force on Sovereign Immunity* (May 1972) as contained in the comment to *N.J.S.A.* 59:4–8 and 9. Otherwise, such actual and potential expenses would cause these areas to be closed to public use. It was deemed "not unreasonable to expect persons who voluntarily use unimproved public property to assume the risk of injuries arising therefrom as part of the price to be paid for the benefits received." *Id.* As thousands of acres of land owned by the State of New Jersey have been set aside for recreation and enjoyment by the public generally, the readily apparent exposure of hazard and risk required that the public entity involved be provided "an absolute immunity irrespective of whether a particular condition is a dangerous one." *Id.* Furthermore, we are instructed that "the term unimproved public property should be liberally construed and determined by comparing the nature and extent of the improvement with the nature and extent of the land." *Id.*

As *N.J.S.A.* 59:4–8 extends immunity to the public entity for an injury caused by any condition of unimproved public property, the effect of the statute is not abrogated merely because a dangerous artificial condition existing on the property was

causally related to the injury. As stated in *Freitag v. Morris Cty.*, 177 *N.J.Super.* 234 (App.Div.1981):

[T]he test to be applied in determining the applicability of *N.J.S.A.* 59:4–8 is whether the property is unimproved. Whether the injury was caused by a natural or "artificial" hazard would be relevant only insofar as it aids the court in determining the nature of the property. This approach more realistically implements the Legislature's intention to encourage public entities to permit citizens to use unimproved public property by immunizing the public entity from tort liability. A public entity should not have to expend tax money to make unimproved property safe, even if such property has dangerous artificial conditions. [*Id.* at 238]

As indicated, Union Lake is part of a 4,300–acre tract acquired by the State in 1982. The lake itself is 850 acres in area and was created about 100 years ago by the construction of an earthen dam and the consequent impoundment of the Maurice River. The dam is a 2,000–foot long, 35–foot wide, gravity earth structure with a masonry and concrete, 200–foot wide, spillway. Large warning signs, "Danger", "Keep Away", are positioned on both sides of the spillway facing the lake. A wire rope barrier stretches across the spillway. The southeastern shore of the lake, owned by the City of Millville, contains a small beach with a demarcated swimming area and a boat launch ramp. No improvements were made by the State to the lake area since its acquisition.

As a designated wildlife management area pursuant to *N.J. A.C.* 7:25–2.18, the natural habitat is protected and the tract is preserved for recreational activities including fishing, boating, hunting, trapping, hiking, bird watching, cross-country skiing, sledding and tobogganing. There are no residences in the wildlife management area and no fee is charged for the use of that area by the public. The lake and the surrounding area are routinely patrolled by State conservation officers for the purpose of enforcing the fish and game laws. As part of these routine patrols, the dam spillway is also inspected for the integrity of the structure.

We are satisfied there is no factual issue as to whether Union Lake as part of the larger tract acquired by the State for

conservation and recreational purposes is "unimproved public property" within the meaning of *N.J.S.A.* 59:4–8. Nor, that the existence of the earthen dam and concrete spillway, although an artificially created structure, causes the nature of this property to be other than unimproved. This conclusion is compelled by legislative directive that "the term unimproved public property should be liberally construed." Comment to *N.J.S.A.* 59:4–8 and 9, *supra.* Clearly, the dam is a necessary and integral part of the lake and thus cannot be considered, as urged by plaintiffs, as a separate and distinct parcel of the State-owned land having no relationship to the unimproved aspect of the entire tract. In comparing the nature and extent of this man-made improvement with the nature and extent of the lake itself it is evident that the existence of the dam cannot detract from the overall unimproved character of this portion of the Union Lake Wildlife Management Area. By analogy, that the reservoirs involved in *Harrison v. Middlesex Water Company,* 158 *N.J.Super.* 368, 381–383 (App.Div.1978), rev'd on other grounds, 80 *N.J.* 391 (1979) and *Trimblett v. State,* 156 *N.J.Super.* 291, 294–295 (App.Div.1977), certif. den., 75 *N.J.* 589 (1977) were created by the construction of a dam was considered insufficient to remove the body of water from the category of rural or semi-rural land within the intendment of *N.J.S.A.* 2A:42A–2, *et seq.* (Landowner's Liability Act).

Moreover, that this body of water was created by the damming of the Maurice River is not a basis to distinguish it from a naturally formed lake in terms of the legislative intent to encourage recreational use of public acreages, both land and water oriented. Certainly the statute should apply where the purposes of the legislation would be fulfilled. The exposure of hazard because of the flow of water over a dam's spillway, while ordinarily not encountered in a wholly natural lake, is not unlike conditions created in such lakes by damming caused by fallen trees and the like or naturally formed waterfalls. Furthermore, it is not dissimilar from other risks arising from the recreational use of such a body of water which must be as-

sumed as part of the price to be paid for the benefits received. We perceive no valid basis for limiting the absolute immunity intended by this legislation because the injuries occurred on an otherwise unimproved lake formed years ago by the damming of a natural river.

■ Plaintiff's further argument based upon the asserted negligence of State employees in supervising the boating activity on Union Lake is made despite the absence of any such allegations in the complaint and the failure to have named any employee as a defendant. However, aside from the procedural barrier, liability pursuant to *N.J.S.A.* 59:3–11 presupposes an injury preventable but for an employee's negligence in supervising the recreational activities taking place. As this court observed in *Morris v. Jersey City*, 179 *N.J.Super.* 460 (App.Div. 1981):

> [T]here must be some conduct, no matter how minute, evidencing an intention to supervise by way of monitoring, entering into or becoming a part of the activity itself from which the injury sprang. Liability for negligent supervision will *not* be imposed simply because there was an incidental undertaking at the same place only tangentially related to the recreational activity. [*Id.* at 464.]

Here, there is no proof that State employees undertook the supervision of the recreational use of the lake. The routine patrols of the conservation officers were directed to enforcement of the applicable laws and regulations. Their inspection of the spillway, being "an incidental undertaking at the same place and only tangentially related to the recretional activity" does not give rise to liability for negligent supervision under *N.J.S.A.* 59:3–11. *Id.* Furthermore, policing is not supervision as contemplated by the statute. *See Vanchieri v. New Jersey Sports and Exposition Auth.*, 201 *N.J.Super.* 34 (App.Div. 1985), rev'd on other grounds, 104 *N.J.* 80 (1986).

For the reasons stated, the denial of the motion of the State of New Jersey for summary judgment dismissing the complaint is reversed. In view of this disposition, there is no need to consider the other arguments raised by plaintiffs on this appeal.

Reversed.