651 A.2d 1040

SONIA ORNES, PLAINTIFF–APPELLANT, v. LONNIE DANIELS, N.J. DEPARTMENT OF CORRECTIONS, SOUTHERN STATE CORRECTIONAL FACILITY AND MARINE ITALIAN BAKERY, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted November 15, 1994—Decided January 17, 1995.

Before Judges PRESSLER, LANDAU and NEWMAN.

*Grimes, Grimes, Grimes & Grimes,* attorneys for appellant (*Joseph P. Grimes* and *Patrick J. Grimes,* on the brief).

*Parker, McCay & Criscuolo,* attorneys for respondent Marine Italian Bakery (*Stacy L. Moore, Jr.* on the brief).

*Deborah T. Poritz,* Attorney General, attorney for respondents New Jersey Department of Corrections and Southern State Correctional Facility (*Mary C. Jacobson,* Assistant Attorney General, of counsel, and *Kevin B. Gelman,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

Plaintiff-appellant Sonia Ornes (Ornes) appeals from a grant of summary judgment entered in favor of defendants-respondents New Jersey Department of Corrections and Southern State Correctional Facility (the State), and in favor of defendant-respondent Marine Italian Bakery (Marine), on Ornes's civil action for damages arising out of her assault and rape by defendant Lonnie Daniels.

At the time of the incident, Daniels was an inmate at Southern State Correctional Facility and was employed at Marine's bakery under a prison work-release program.

The State's summary judgment motion was granted by reason of its immunity under the New Jersey Tort Claims Act (*N.J.S.A.* 59:1–1 *et seq.*). Summary judgment was awarded to Marine on the basis of derivative immunity. Default judgment was entered against Daniels for failure to plead or otherwise defend.

Ornes was attacked in an alley adjacent to the bakery by Daniels during his working hours under the program. Admission to such program is authorized by *N.J.S.A.* 30:4–91.3 and applicable Department of Corrections "guidelines."[1] In pertinent part, the statute provides that:

> The commissioner or his duly authorized agent or agents may extend the limits of the place of confinement of a prisoner [to] ... work at paid employment ... in the community on a voluntary basis while continuing as a prisoner of the institution or facility to which he is committed....
>
> [*N.J.S.A.* 30:4–91.3(b)]

The guidelines to the program state that purpose of the work-release program is to:

> [P]rovide a program in New Jersey correctional institutions whereby selected inmates, prior to parole or expiration of maximum sentence, are released for a daily scheduled period of time to engage in full or part time employment in the community at an approved work opportunity...."

Pursuant to the guidelines, both an inmate and an employer must satisfy a number of criteria before inclusion in the work-release program. A potential employer must be evaluated by a prison official for the following:

a. Credibility of the employer;
b. Proximity to the institution;
c. Working conditions of the employees;
d. Availability of transportation;
e. Training opportunities afforded;
f. Potential hazards to health of the employees;

---

[1] We have been cited to no regulations adopted pursuant to the Administrative Procedures Act.

   g.  Employer's ability to meet the requirements of Departmental Standards, i.e., workmen's compensation, minimum wage, etc.;

   h.  Duration of the offered employment and benefits; and,

   i.  Union application and response.

The evaluation includes a background check of the potential employer with local police and an on-site inspection of the work-site. The placement "must provide dignity on the job, treatment that is the same as his/her peers, and the same wages." Once accepted, an employer is regularly monitored; a process that, according to the guidelines, includes a visit at least once monthly by a prison official to discuss "the program impact upon the employer, civilian employees and community reaction to the program . . . ."

Marine had been a work-site for approximately eight years before the attack. Daniels had been placed there approximately one month when it occurred. Although the record is unclear as to the terms of any agreement between Marine and the prison, there was deposition testimony that a written contract existed. It appears clear that Marine had no authority to change any program rules and that it was instructed to treat inmates like any other employees. The bakery's owners had no knowledge as to the background of any inmate in the program, nor were they given input into who was selected for placement at Marine.

Inmates were not permitted to leave the premises of the bakery. If this happened, or if there was any other problem, the bakery was instructed to contact both the local police and the work-release program coordinator. Daniels was discovered to be missing on the same night as the assault. One of Marine's owners contacted the police and the Southern State Correctional Facility immediately. Shortly before this, police had been informed of the assault.

On appeal, Ornes argues that (1) the State is not entitled to immunity under the Tort Claims Act because it failed to properly perform ministerial acts and duties and because Daniels was not "escaped" at the time of the attack, and (2) that Marine Italian

Bakery is not entitled to derivative immunity because it failed to properly carry out ministerial functions.

Tort Claims Act immunity applicable to the State in this case is provided by *N.J.S.A.* 59:5–2:

Neither a public entity nor a public employee is liable for:

a. An injury resulting from the parole *or release* of a prisoner or from the terms and conditions of his parole or release or from the revocation of his parole or release.

b. any injury caused by:

(1) an escaping or escaped prisoner;

(2) an escaping or escaped person; or

(3) a person resisting arrest; or

(4) a prisoner to any other prisoner.

(emphasis provided)

■ Pursuant to *N.J.S.A.* 59:5–2(a) the State enjoys absolute immunity against suits for injuries resulting from an assault committed by an inmate participating in a community work-release program. *Burg v. State,* 147 *N.J.Super.* 316, 325, 371 *A.*2d 308 (App.Div.), *certif. denied,* 75 *N.J.* 11, 379 *A.*2d 242 (1977). *Compare Flodmand v. Institutions and Agencies Dep't,* 175 *N.J.Super.* 503, 511–12, 420 *A.*2d 365 (App.Div.1980) (finding no immunity where inmate still in custody attacked visitor at correctional facility). Ornes's contention that the State's tort immunity applies to the results of its decision to implement a work-release program, but not to consequences of its administration of such a program, is without merit. *N.J.S.A.* 59:5–2 makes no such distinction. *Burg, supra,* at 322, 371 *A.*2d 308. Thus, the trial court did not err in finding that the State was immune from suit for Daniel's attack on Ornes.

Since the State clearly enjoys immunity from suit in this case pursuant to *N.J.S.A.* 59:5–2(a), it is not necessary for us to address Ornes' argument that Daniels was not an "escaped" prisoner under *N.J.S.A.* 59:5–2(b) at the time of the attack.

■ As to the question of Marine's derivative immunity, we note that a public contractor may share immunity with the State if, while working under the guidance and supervision of a public

entity, the contractor has not deviated independently and negligently from that contract. *Rodriguez v. N.J. Sports & Exposition Authority,* 193 *N.J.Super.* 39, 45, 472 *A.*2d 146 (App.Div.1983), *certif. denied,* 96 *N.J.* 291, 475 *A.*2d 586 (1984); *Cobb v. Waddington,* 154 *N.J.Super.* 11, 18, 380 *A.*2d 1145 (App.Div.1977). A public contractor may be held liable, however, for negligent execution of its contract, as derivative immunity is an affirmative defense for which the contractor bears a burden of both pleading and persuasion. *Vanchieri v. New Jersey Sports and Exposition Authority,* 104 *N.J.* 80, 87, 514 *A.*2d 1323 (1986).

Derivative immunity is explained in *Vanchieri* as resting upon two principles. First, the costs of denying immunity would inevitably be passed directly by public contractors to the immunized public entity, rendering meaningless the tort immunity where the contractor was merely doing what it contracted to do. "The second principle underlying public contractor immunity concerns notions of fairness." *Vanchieri, supra,* at 86, 514 *A.*2d 1323. While the facts in *Vanchieri* concerned the question of innocent compliance with government directions and specifications, we think that the present case must be tested on its own merits within the framework of the *Vanchieri* tests of increased public cost and inherent fairness.

Marine certified that the only critical obligation imposed under its contract with the prison was to notify it and the police if an inmate disappeared. No contrary proofs were presented. Unlike the *Vanchieri* and *Rodriguez* cases, the public contractor here was not engaged in the business of providing security. Marine was not even in the business of contracting with the State to sell its products or services for a profit. Its sole function, as we see it, from the standpoint of public cost, sound public policy and fairness, was to provide inmates designated by the prison with a normal job in a normal work environment.

It would be ironic, and surely unfair, to insulate from liability the institution charged with supervision of prisoners, while exposing a bakery to liability for violent conduct of a prisoner whom it

has done no more than to employ in accordance with an agreement with the State which has not been shown to impose upon the employer additional supervisory obligations.

Absent specific agreement with the State, employers of work-release programs should not have the responsibility for security. It is apparent that routinely placing liability upon the employer would represent a cost passed on to the State. This appears to us sufficient to meet the first *Vanchieri* principle. As to the fairness principle, Marine is a bakery, not a warder. Its undertaking of the role of employer should not, under the *Vanchieri* principles, be interpreted to render meaningless the State's immunity or to expose Marine as a work-site employer to the costly burden of fulfilling a function not within the limited scope of its undertaking. *Compare Black v. Borough of Atlantic Highlands,* 263 *N.J.Super.* 445, 454, 623 *A.*2d 257 (App.Div.1993) (finding summary judgment inappropriate for independent contractor where record suggested a tenable basis for breach of non-immunized duty.)

Affirmed.