54 A.3d 848

CRYSTAL ICE–BRIDGETON, LLC, PLAINTIFF–APPELLANT, v. CITY OF BRIDGETON, CITY OF BRIDGETON BUREAU OF FIRE PREVENTION, ROBERT MIXNER, DAVID E. SCHOCH, AND DAVID GATES EXCAVATING, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued telephonically October 15, 2012—Decided November 13, 2012.

Before Judges PARRILLO, SABATINO and FASCIALE.

*Jeffrey A. Dilazzero* argued the cause for appellant.

*Tracy C. Bussel* argued the cause for respondents City of Bridgeton, City of Bridgeton Bureau of Fire Prevention, Robert Mixner, and David E. Schoch (*Gebhardt & Kiefer, P.C.*, attorneys; *Richard P. Cushing*, of counsel; *Ms. Bussel*, on the brief).

*John Jacob Van Dyken* argued the cause for respondent David Gates Excavating (*Mintzer, Sarowitz, Zeris, Ledva & Meyers, LLP*, attorneys; *Mr. Van Dyken*, on the brief).

The opinion of the court was delivered by

FASCIALE, J.A.D.

Plaintiff Crystal Ice–Bridgeton, LLC, appeals from two orders [1] granting summary judgment to defendants City of Bridgeton, City of Bridgeton Bureau of Fire Prevention (collectively referred to as

---

[1] We deem the orders dated October 21, 2011 to be interlocutory. In December 2011, plaintiff filed its appeal even though Bridgeton's counterclaim alleging nuisance remained unresolved. In March 2012, plaintiff and Bridgeton entered into a consent order to dismiss Bridgeton's counterclaim without prejudice "pending the outcome ... of the appeal." The consent order does not eliminate the interlocutory character of the October 21, 2011 orders granting summary judgment in favor of defendants. *See Grow Co. v. Chokshi*, 403 *N.J.Super.* 443, 457–59, 461, 959 *A.2d* 252 (App.Div.2008) (discussing the need for finality and stating that "dismissal of claims without prejudice must not become a device 'to foist jurisdiction upon th[e appellate] court' over what is, in reality, an interlocutory order" (quoting *CPC Int'l, Inc. v. Hartford Accident & Indem. Co.*, 316 *N.J.Super.* 351, 366, 720 *A.2d* 408 (App.Div.1998), *certif. denied*, 158 *N.J.* 73, 74, 726 *A.2d* 937 (1999))); *see also* Pressler & Verniero, *Current N.J. Court Rules*, comment 2.2.4 on *R.* 2:2–3 (2013) (noting that "a dismissal without prejudice of either an issue or a party ... with the contemplation of commencement of a subsequent action and entered for the purpose of rendering an otherwise interlocutory order appealable will preclude the finality and hence the appealability of that order").

Nevertheless, given the nature of plaintiff's substantive arguments, we elect to consider the merits of the summary judgment orders for purposes of expediency and, therefore, grant plaintiff leave to appeal the orders nunc pro tunc. *See Caggiano v. Fontoura*, 354 *N.J.Super.* 111, 124, 804 *A.2d* 1193 (App.Div.2002) (noting that " 'in the public interest leave will be granted nunc pro tunc where the appellant filed a notice of appeal rather than a required motion for leave' " (quoting Pressler, *Current N.J. Court Rules*, comment on *R.* 2:2–4 (2001))).

"Bridgeton"), Robert Mixner (Mixner), David E. Schoch (the Chief) (the aforementioned defendants are collectively referred to as "the City defendants"), and David Gates Excavating, Inc. (Gates) (all defendants are collectively referred to as "the defendants"). The core question presented is whether plaintiff was entitled to notice before Gates demolished portions of plaintiff's fire-damaged building. We affirm.

In reviewing a grant of summary judgment, we apply the same standard under *Rule* 4:46–2(c) that governs the trial court. *See Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A.*, 189 *N.J.* 436, 445–46, 916 *A.*2d 440 (2007). We must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." *Brill v. Guardian Life Ins. Co. of Am.*, 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995). Viewed most favorably to plaintiff, the summary judgment record established the following facts.

In February 2008, a fire occurred in a vacant 17,000 square foot commercial building that plaintiff owned in Bridgeton. The building, located near a residential area, was made of timber, brick, and steel, and contained a propane tank and a generator in the middle of the structure. Bridgeton's fire alarm sounded at 1:36 a.m.; firefighters arrived at the building four minutes later and witnessed the entire building engulfed in flames. The last fire unit cleared the scene of the fire at 10:39 a.m. The fire destroyed the building.

The Chief observed that "[sixty-five percent] of the structure was engulfed in flames, ... [and t]he whole first story ... was showing fire through the roof." The roof "was partially collapsed," the windows were boarded up, and the doors were "locked from the inside or padlocked from the outside." The Chief was familiar with the building from a previous inspection and knew that there was no floor in the center of the structure. As a result, firefighters attacked the fire from the outside of the building

because "if someone entered the building, they would [have] fall[en]" through the floor.

Under the Chief's supervision, firefighters attempted unsuccessfully to use two aerial devices that each pumped 1000 gallons of water per minute to "blow [a] wall apart" to reveal any hidden fires, and the Chief called in tankers from other fire departments because of an inoperable fire hydrant. Around 5:50 a.m., the firefighters dialed 9–1–1 and called Gates "to tear parts of the building down to open up hidden pockets of fire" because the "fire was still burning."[2]  The Chief determined that the fire was "under control" by 6:25 a.m., but did not then declare that the fire was out.

Regarding the partial demolition of plaintiff's building, the Chief asserted that "[t]he two remaining walls ... were taken down because they were deemed unsafe."  David Gates, a co-owner of Gates, acknowledged that the Chief instructed Gates "to demolish certain portions of [the building that Bridgeton] and [b]uilding/[c]onstruction [d]epartment [o]fficials had determined ... to be structurally unsafe."  And, Robert Mixner, the City of Bridgeton's construction official and zoning officer, certified that "[the Chief] and [I] *agreed* that the two sections of wall should come down."  (Emphasis added).  Thereafter, "[m]utual aid units were released over the next couple of hours."  In total, firefighters were at the scene for approximately nine hours.

The defendants moved for summary judgment and plaintiff cross-moved for partial summary judgment on the issue of liability.[3]  The defendants contended that the Chief had the sole

---

[2] Daniel Wright, from the Bridgeton police forensics unit, stated in his investigative report that Gates was on the scene "dismember[ing] the building" while there were "flames coming from the roof and smoke billowing out."

[3] Plaintiff also appealed from an October 21, 2011 order denying its motion for partial summary judgment.  We find insufficient merit in plaintiff's contention that the judge erred by denying its cross motion to warrant discussion of that contention in a written opinion. *R.* 2:11–3(e)(1)(E).

authority to direct operations at the fire scene and acted pursuant to *N.J.S.A.* 40A:14–54.1. The defendants asserted that they had no duty to provide notice of the demolition to plaintiff. Plaintiff argued that it was entitled to twenty-four hours' notice of the demolition pursuant to *N.J.A.C.* 5:23–2.32(b)(2) and the procedural safeguards provided in *N.J.S.A.* 40:48–2.5(f)(2).

In October 2011, Judge David W. Morgan, J.S.C., conducted oral argument, rendered a lengthy oral opinion, and dismissed plaintiff's complaint [4] with prejudice. In granting the defendants' motion and denying plaintiff's cross-motion, the judge concluded that pursuant to *N.J.S.A.* 40A:14–54.1, the Chief had the "sole authority" to direct operations at the scene of the fire, and that his authority terminated at such time as the Chief declared the fire out. Moreover, the judge noted that there was nothing "in the record ... that ever signal[ed] [that the] fire [was] out." The judge held that because the Chief did not declare that the fire was out, he acted within his statutory authority to order Gates to demolish portions of the building without providing notice to plaintiff. The judge additionally concluded that the defendants were entitled to immunity pursuant to the Tort Claims Act (TCA), *N.J.S.A.* 59:1–1 to 12–3. Relying on the *Restatement of Law (Second) Agency* § 343, the judge dismissed the claims against Gates stating that Gates "was simply following what the principal ... told him to do."

On appeal, plaintiff argues that the City defendants failed to provide it with twenty-four hours' written notice of the demolition. Plaintiff contends that the judge erred by not applying the notice provision contained in *N.J.A.C.* 5:23–2.32(b)(2) and the summary hearing provision contained in *N.J.S.A.* 40:48–2.5(f)(2). Giving plaintiff the benefit of all reasonable inferences, we conclude that the defendants are entitled to judgment as a matter of law. *Brill, supra,* 142 *N.J.* at 540, 666 *A.*2d 146.

---

[4] We note that plaintiff's complaint did not include claims of a taking of property or constitutional deprivation.

In fighting the ongoing fire, the Chief acted pursuant to *N.J.S.A.* 40A:14–54.1, which provides that

> [t]he chief ... of any municipal paid or part-paid fire department . . who is charged with the duty of supervising or directing operations at the scene of any fire shall be the *sole authority* within fire lines established by said fire chief .. at the scene of such fire *with respect to all firefighting operations relating to the protection of lives and property endangered by such fire,* and within said fire lines such authority shall supersede that of any municipal police authority. The authority hereby invested in the chief ... shall terminate at such time as he shall declare the *fire out* . . . .

[ (Emphasis added).]

The purpose of this law is to give a fire chief "sole authority" to direct ongoing fire operations to protect the lives and property endangered by a fire until he or she declares the fire to be out. *Assembly Judiciary, Law, Public Safety, and Defense Committee, Statement to A.238* (Feb. 4, 1980). It is undisputed that the Chief did not declare the fire out at the time that he authorized Gates, either alone or jointly with Mixner, "to tear parts of the building down to open up hidden pockets of fire." Moreover, plaintiff acknowledges that *N.J.S.A.* 40A:14–54.1 does not require the Chief to provide notice that parts of the building would be demolished.

Plaintiff contends, however, that the Chief is obligated to adhere to the notice requirements contained in *N.J.A.C.* 5:23–2.32(b)(2) and the summary hearing safeguards provided in *N.J.S.A.* 40:48–2.5(f)(2).[5] We conclude that *N.J.A.C.* 5:23–2.32(b)(2) and *N.J.S.A.* 40:48–2.5(f)(2) are inapplicable under the undisputed facts of this case.

*N.J.A.C.* 5:23–2.32(b)(2), emergency measures for unsafe structures, provides in relevant part:

---

[5] During oral argument, plaintiff conceded that it never sought a post-deprivation hearing. *See Rivkin v. Dover Twp. Rent Leveling Bd.,* 143 *N.J.* 352, 373, 671 *A.*2d 567, *cert. denied,* 519 *U.S.* 911, 117 *S.Ct.* 275, 136 *L.Ed.*2d 198 (1996) (holding that "an adequate post-deprivation hearing will satisfy the requirements of the Due Process Clause" in "cases in which pre-deprivation process was impracticable because the plaintiff was deprived of property as the result of a[n allegedly] . . unauthorized act of a state employee").

> Temporary safeguards: When, in the opinion of the *construction official,*[6] there is actual and immediate danger of collapse or failure of a building or structure or any part thereof which would endanger life, the construction official shall cause the necessary work to be done *to render such building or structure or part thereof temporarily safe,* whether or not the legal procedure herein has been instituted. Such work *may include such demolition* as may be necessary in order to eliminate any actual and immediate danger to human life; *provided, however, that any demolition work shall not commence until at least [twenty-four] hours following service of notice of the pending demolition upon the owner,* unless such service is not possible because the identity or the address of the owner cannot be determined from public records. *Upon expiration of the [twenty-four]-hour period, demolition may proceed unless stayed by order of the Superior Court.*
>
> [ (Emphasis added).]

Thus, *N.J.A.C.* 5:23–2.32(b)(2) permits a construction official to order the demolition of a structure that is deemed to pose a danger of collapse so long as he or she provides twenty-four hours' notice to the owner.

*N.J.S.A.* 40:48–2.5(f)(2) allows a public official to seek judgment for demolition in a summary proceeding. The relevant part of the statute provides that

> a municipality is hereby authorized to adopt an ordinance relating to buildings ... which are unfit for human habitation or occupancy or use. Such ordinance shall include the following provisions:
>
> . . . .
>
> (f) That the amount of
>
> . . . .
>
> (2) such cost of such repairs, alterations or improvements, or vacating and closing, or removal or demolition, if any,
>
> or the amount of the balance thereof ... shall be a municipal lien against the real property upon which such cost was incurred.
>
> If an actual and immediate danger to life is posed by the threatened collapse of any fire damaged or other structurally unsafe building, the public officer may, after taking such measures as may be necessary to make such building temporarily safe, seek a judgment in summary proceedings for the demolition thereof.

---

6 " 'Construction official' means a qualified person appointed by the municipal appointing authority or the commissioner [of the Department of Consumer Affairs] pursuant to the [State Uniform Construction Code Act, *N.J.S.A.* 52:27D–119 to –141] and the regulations to enforce and administer the regulations within the jurisdiction of the enforcing agency." *N.J.A.C.* 5:23–1.4.

We are not dealing with a situation where a construction official decided independently, without the involvement of a fire chief, to demolish a fire-damaged building. In such a situation, the requirements in *N.J.S.A.* 40:48-2.5(f)(2) and *N.J.A.C.* 5:23-2.32(b)(2) potentially would be applicable. Here, however, Mixner's unrebutted certification attests that he and the Chief agreed that portions of the building needed to be demolished. The Chief acquiesced in the demolition order while the fire had not yet been declared out and while firefighters were still on the scene. There is no evidence in the record that the Chief had relinquished his statutory authority under *N.J.S.A.* 40A:14-54.1 when the decision to demolish was made. The possibility suggested by the record that the decision may have been communicated by Mixner to Gates, rather than by the Chief, does not negate the fact that the Chief's concurrence authorized the decision. It is legally inconsequential who communicated the decision. Thus, we agree with the motion judge that the Chief was not required to provide twenty-four hours' notice to plaintiff and participate in a hearing prior to authorizing Gates, in consultation with Mixner, to demolish part of the building.

We now address whether Bridgeton, Mixner, and the Chief are entitled to immunity pursuant to the TCA. Public entities and public employees have the burden of proving that they are immune from suit. *Leang v. Jersey City Bd. of Educ.,* 198 *N.J.* 557, 582, 969 *A.*2d 1097 (2009); *Bligen v. Jersey City Hous. Auth.,* 131 *N.J.* 124, 128, 619 *A.*2d 575 (1993). *N.J.S.A.* 59:3-6 provides immunity to a public employee "for an injury caused by his ... order, or similar authorization where he is authorized by law to determine whether or not such authorization should be issued." *See also N.J.S.A.* 59:2-5 (same language applying to public entities). Similarly, a public employee is exculpated from liability for injury "resulting from the exercise of judgment or discretion vested in him." *N.J.S.A.* 59:3-2(a). *N.J.S.A.* 59:3-3 provides that "[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law." *See Frields v.*

*St. Joseph's Hosp. & Med. Ctr.*, 305 *N.J.Super.* 244, 249 n. 1, 702 *A.*2d 353 (App.Div.1997) (noting that "[t]his statute confers an immunity on public employees for acts or omissions in the course of the enforcement of a statute ... or regulation"). "[O]rdinary negligence is an insufficient basis for holding a public employee liable under *N.J.S.A.* 59:3–3." *Lascurain v. City of Newark*, 349 *N.J.Super.* 251, 287, 793 *A.*2d 731 (App.Div.2002). Regarding the City itself, "[a] public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable." *N.J.S.A.* 59:2–2.

The Chief acted pursuant to statutory authority, *N.J.S.A.* 40A:14–54.1, which provided him with the sole authority to combat the fire. *N.J.S.A.* 59:3–6. He acted in "good faith" in conducting firefighting operations and in ordering the destruction of the property to reveal any possibly hidden fires. *N.J.S.A.* 59:3–3. At most, the Chief's actions constituted "ordinary negligence." *Lascurain, supra*, 349 *N.J.Super.* at 287, 793 *A.*2d 731. As a result of the Chief's immunity, the City and Mixner are not liable either. *N.J.S.A.* 59:2–2.

Finally, under certain circumstances, public contractors are entitled to derivative immunity under the TCA. *Vanchieri v. N.J. Sports & Exposition Auth.*, 104 *N.J.* 80, 87, 514 *A.*2d 1323 (1986). "[A] public contractor may share immunity with the State if, while working under the guidance and supervision of a public entity, the contractor has not deviated independently and negligently from that contract." *Ornes v. Daniels*, 278 *N.J.Super.* 536, 541–42, 651 *A.*2d 1040 (App.Div.1995). "[T]he costs of denying immunity would inevitably be passed directly by public contractors to the immunized public entity, rendering meaningless the tort immunity where the contractor was merely doing what it contracted to do." *Id.* at 542, 651 *A.*2d 1040. " 'The second principle underlying public contractor immunity concerns notions of fairness.' " *Ibid.* (quoting *Vanchieri, supra*, 104 *N.J.* at 86, 514 *A.*2d 1323). Here, there is no evidence that Gates "deviated independently and negligently [from its contract]." *Id.* at 542, 651 *A.*2d

1040. As a result, Gates acted reasonably "under the guidance and supervision" of the fire chief and the municipal construction official, *id.* at 541, 651 *A.*2d 1040, and is thus entitled to immunity too.

Affirmed.