NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2546-16T4
           A-5399-16T3
           A-5668-16T3

BERNICE PISACK, on behalf
of herself and all others
similarly situated,

    Plaintiff-Appellant/
    Cross-Respondent,

v.

B & C TOWING, INC.,

    Defendant-Respondent/
    Cross-Appellant,

and

MARIE J. CAVALCHIRE and ALAN
ANTHONY YOUNG,

    Defendants,

and

B & C TOWING, INC.,

    Defendant/Third-Party Plaintiff-
    Respondent/Cross-Appellant,

v.

THE CITY OF NEWARK,

    Third-Party Defendant-Respondent.

---

| |
|---|
| **APPROVED FOR PUBLICATION** |
| **June 14, 2018** |
| **APPELLATE DIVISION** |

EPTISAM PELLEGRINO, on behalf
of herself and all others
similarly situated,

    Plaintiff-Appellant,

v.

NICK'S TOWING SERVICE, INC.,

    Defendant-Respondent,

and

NICHOLAS TESTA and SUSAN
TESTA,

    Defendants.

_____

CHRISTOPHER WALKER, on behalf
of himself and all others
similarly situated,

    Plaintiff-Appellant,

v.

ALL POINTS AUTOMOTIVE & TOWING,
INC.,

    Defendant-Respondent,

and

THOMAS LOCICERO,

    Defendant.

_____

        Argued April 24, 2018 — Decided June 14, 2018

        Before Judges Reisner, Hoffman, and Gilson.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-6501-13, and Bergen County, Docket Nos. L-1606-17 and L-7929-13.

Andrew R. Wolf argued the cause for appellant/cross-respondent in A-2546-16 and appellant in A-5668-16 (The Wolf Law Firm, LLC, and Christopher J. McGinn, attorneys; Matthew S. Oorbeek, on the briefs).

Andrew R. Wolf argued the cause for appellant in A-5399-16 (The Wolf Law Firm, LLC, and Edwyn D. Macelus, attorneys; Matthew S. Oorbeek, on the briefs).

Gabriel H. Halpern argued the cause for respondent/cross-appellant in A-2546-16 (Pinilis Halpern, LLP, attorneys; Gabriel H. Halpern, of counsel and on the brief).

Steven F. Olivo, Assistant Corporation Counsel, argued the cause for respondent in A-2546-16 (Kenyatta K. Stewart, Corporation Counsel, attorney; Steven F. Olivo, on the brief).

Jeremy B. Stein argued the cause for respondent in A-5399-16 (Hartmann Doherty Rosa Berman & Bulbulia, LLC, attorneys; Paul S. Doherty, III, and Jeremy B. Stein, on the brief).

Brian T. Giblin, Sr., argued the cause for respondent in A-5668-16 (Giblin & Gannaio, attorneys; Brian T. Giblin, Sr., and Brian T. Giblin, Jr., on the brief).

The opinion of the court was delivered by

GILSON, J.A.D.

These three appeals involve the non-consensual towing of vehicles and raise questions concerning the Predatory Towing

Prevention Act (Towing Act), N.J.S.A. 56:13-7 to -23, the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20, and the Truth-In-Consumer Contract, Warranty and Notice Act (TCCWNA), N.J.S.A. 56:12-14 to -18. Accordingly, we issue a consolidated opinion to address the common questions presented by these appeals.

Having reviewed the language and legislative history of the Towing Act and its implementing regulations, we hold that: (1) the Towing Act does not require the exhaustion of administrative remedies before the Division of Consumer Affairs (Division) or dispute resolution procedures established by municipalities that have towing ordinances; (2) the Tort Claims Act (TCA) does not provide immunity against claims based on the fees companies charge for non-consensual towing of vehicles; and (3) the Towing Act and its regulations limit the services for which a towing company can charge. We also hold that the TCCWNA applies to the non-consensual towing of vehicles because the bills issued by towing companies are contracts and notices within the definition of the TCCWNA. Finally, we hold that class actions may, in the right circumstances, be appropriate for claims under the Towing Act, the CFA, and the TCCWNA.

Accordingly, we reverse the orders on appeal in each of these three cases and remand for further proceedings. Specifically, in Walker, we reverse a July 24, 2017 order granting summary judgment

to defendants and remand for further proceedings; in Pisack, we reverse a January 13, 2017 order denying plaintiff's motion to certify a class and granting defendants' cross-motion for summary judgment, and we remand for further proceedings; and in Pellegrino, we reverse a June 5, 2017 order striking plaintiff's request to certify a class action and remand to allow class discovery.

I.

Each of these appeals involves certain common facts. None of the three named plaintiffs consented to the towing of their vehicles. Instead, the vehicles were towed from public roads at the direction of the police. Plaintiffs then were charged for the non-consensual towing of their vehicles by privately-owned towing companies that had contracts with the local municipalities to provide such towing and storage services.

Beyond those common facts, the three cases arise out of different factual backgrounds and involve different procedural histories. Thus, we will summarize the relevant facts and procedural history of each case to give context to the issues.

Walker

In the early morning hours of December 29, 2012, Christopher Walker was driving his vehicle in River Edge when he was stopped by a police officer. The officer observed the vehicle was not registered. Thus, the officer issued Walker a summons and directed

5

that the vehicle be towed and held until Walker registered the vehicle. Defendant All Points Automotive & Towing, Inc. (All Points Towing), which had a contract with River Edge, towed Walker's vehicle.

Walker registered the vehicle later that same day, which was a Saturday, and tried to pick up the vehicle from All Points Towing before it closed for business at 1 p.m. Walker contends that the police authorized the release of his vehicle on December 29, 2012, but All Points Towing refused to release the vehicle to him because they were closing for the remainder of the weekend. In contrast, All Points Towing maintains that the police did not authorize the release of the vehicle until the following Monday, December 31, 2012.

On December 31, 2012, Walker retrieved his vehicle, and All Points Towing charged him $290.85. Walker was given a bill that listed the charges as: Towing Charge $125; Storage $120; "Admin" $35; Tax $10.85; and Total $290.85. Walker paid the bill in cash without disputing the charges.

In October 2013, Walker filed a complaint on behalf of himself and similarly situated individuals against All Points Towing and its owner. Walker alleged that the Towing Act did not permit an administrative charge for the non-consensual towing of a vehicle that was not involved in an accident. Walker contended that the

6                                                              A-2546-16T4

administrative charge violated the Towing Act, the CFA, and the TCCWNA. Walker also asserted that All Points Towing unlawfully failed to release his vehicle after normal business hours as required by the Towing Act and its regulations. Thus, Walker asserted that a class action should be certified.

The case effectively was stayed while Walker was on active military service. See R. 1:13-6. Following the completion of discovery, defendants moved for summary judgment. Walker had not filed a motion to certify the class. The trial court heard oral argument and, on July 24, 2017, issued a written opinion and entered an order granting defendants summary judgment.

In Walker's case, the court granted defendants summary judgment on two grounds. First, the court found that Walker had failed to administratively resolve his dispute. In that regard, the court held that the Towing Act regulations required vehicle owners who disputed charges imposed by a towing company for non-consensual towing services to use good faith efforts to resolve the dispute before filing a lawsuit. The court also held that if those good faith efforts failed, the vehicle owner then must either go to the Division to seek reimbursement of the disputed amount, or avail himself or herself of the dispute resolution mechanisms established by the municipality. Second, the court reasoned that

the administrative fee was allowed by the River Edge towing ordinance and, therefore, was a permitted fee.

The trial court never addressed Walker's claim that defendant unlawfully failed to release his vehicle after hours. The trial court also did not clarify whether Walker could refile his lawsuit after he exhausted his administrative remedies.

Pisack

On June 25, 2013, the son of Bernice Pisack illegally parked her car on a public street in Newark. The Newark Police contacted B & C Towing, Inc. (B&C Towing) and directed it to tow Pisack's vehicle to its lot. B&C Towing had a contract with Newark to provide such towing services.

Later that day, Pisack's son went to B&C Towing's lot and retrieved the vehicle. He was given a bill for $152.45, which listed the charges as: Towing $65; Labor (recovery) $25; Administrative Fee $50; Storage $10; and Tax $2.45. Under B&C Towing's contract with Newark, B&C Towing retained $25 of the administrative fee and remitted the remaining $25 to Newark. The son paid the bill without contesting the charges.

In October 2013, Bernice Pisack filed a proposed class action against B&C Towing and its owners, alleging violations of the Towing Act, the CFA, and the TCCWNA. Specifically, Pisack challenged the labor charge and the administrative fee.

B&C Towing moved to dismiss the complaint, but in an order entered on March 28, 2014, the trial court denied that motion. B&C Towing then filed an answer and asserted a third-party complaint against Newark. Thereafter, the claims against Newark were severed and transferred to another vicinage.

Following discovery, Pisack filed a motion to certify the class, and B&C Towing cross-moved for summary judgment. After hearing oral argument on the motions, the trial court entered an order on January 13, 2017, granting summary judgment to defendants and denying plaintiff's motion as "moot."

The court explained its reasons on the record and identified four grounds for its decision: (1) the TCCWNA was inapplicable because there was no contract between Pisack and B&C Towing; (2) Pisack failed to exhaust administrative remedies before pursuing a court action; (3) the fees charged by B&C Towing were permitted under Newark's towing ordinance; and (4) B&C Towing was entitled to derivative immunity under the TCA because the towing was performed at the direction of the police.

Pellegrino

On November 28, 2015, Eptisam Pellegrino was involved in a motor vehicle accident in East Rutherford. At the direction of the East Rutherford Police, Nick's Towing Service, Inc. (Nick's Towing), towed Pellegrino's vehicle. Three days later, Pellegrino

9

contacted Nick's Towing to inquire about the charges related to the towing and storage services. She was informed that the charges totaled $448.36, and she authorized Nick's Towing to charge her credit card.

Thereafter, Nick's Towing sent Pellegrino an itemized bill, which listed the charges as: Flatbed/Towing $125; Yard Charge $40; Crash/Collision Wrap $60; Credit Card Surcharge $13.06; Administrative Charge $40; Sweep Roadway/Cleanup $30; Storage Fee $120; and Sales Tax $20.30.

In March 2017, Pellegrino filed a complaint on behalf of herself and similarly situated individuals against Nick's Towing and its owners. Pellegrino alleged that the yard charge, the credit card surcharge, the administrative charge, and the storage fee violated the Towing Act, the CFA, and the TCCWNA.

Without engaging in discovery, defendants filed a motion to dismiss Pellegrino's complaint. Alternatively, defendants sought to deny class certification. The trial court heard oral argument and, on June 5, 2017, issued a written opinion and entered an order ruling that Pellegrino could pursue her claims only in her individual capacity and not on behalf of a class. The court also denied the remainder of the motion to dismiss.

The court found that Pellegrino could not satisfy the standard for class certification because the questions of law and fact

affecting the class did not predominate over those affecting individual members of the proposed class. We granted plaintiff's motion for leave to appeal the interlocutory order of June 5, 2017.

II.

To summarize, plaintiffs appeal from three orders. Walker appeals from a July 24, 2017 order granting summary judgment to defendants. Pisack appeals from a January 13, 2017 order denying class certification and granting summary judgment to defendants. On leave granted, Pellegrino appeals from a June 5, 2017 interlocutory order denying her request to certify a class and allowing her to proceed only on her individual claims.

Collectively, the appeals raise four legal issues: (1) whether the Towing Act requires the exhaustion of administrative remedies and dispute resolution procedures before a civil suit can be filed in court; (2) whether towing companies that engage in non-consensual towing at the direction of the police are immune from liability under the TCA for claims related to the fees they charge; (3) whether the Towing Act limits the types of services for which a towing company can charge a fee for the non-consensual towing of a vehicle; and (4) whether the TCCWNA applies to the non-consensual towing of vehicles. The appeals also raise a fifth fact-based issue of whether certain claims for violations of the

11

Towing Act, the CFA, and the TCCWNA can be pursued as class actions.

To put these issues in context, we will start with an overview of the relevant statutes, which include the Towing Act, the CFA, and the TCCWNA. We will then address the four legal issues. Thereafter, we will analyze the class action issue. Finally, we will apply our holdings to each case and also discuss any issues specific to the individual cases.

A.   The Relevant Statutes

1. The Towing Act

When enacting the Towing Act in 2008, the Legislature declared that it was "in the public interest to create a coordinated, comprehensive framework to establish and enforce minimum standards for tow truck operators." N.J.S.A. 56:13-8(e). The Legislature also declared that the purpose of the Towing Act was to prevent predatory towing practices, which included "charging unwarranted or excessive fees, . . . or overcharging consumers for towing services provided under circumstances where the consumer has no meaningful opportunity to withhold consent[.]" N.J.S.A. 56:13-8(b).

The Towing Act primarily focuses on the towing of motor vehicles from private property and the non-consensual towing of motor vehicles from public roadways. See N.J.S.A. 56:13-9. The

Towing Act defines "non[-]consensual towing" as "the towing of a motor vehicle without the consent of the owner or operator of the vehicle." Ibid. The Towing Act's regulations add that "'[n]on-consensual towing' includes towing a motor vehicle when law enforcement orders the vehicle to be towed whether or not the owner or operator consents." N.J.A.C. 13:45A-31.2. These appeals involve non-consensual towing of vehicles from public roadways.

The Towing Act requires the Director of the Division of Consumer Affairs (Director) to establish, by regulation, a schedule of the services for which a towing company can charge fees in connection with the non-consensual towing of a motor vehicle. N.J.S.A. 56:13-14(a). The Towing Act also provides that the fees charged "shall be reasonable and not excessive" and defines "presumptively unreasonable and excessive" fees. N.J.S.A. 56:13-14(b). A fee is presumed to be unreasonable if it is more than twenty-five percent greater than fees charged to consumers who consent to the tow, or more than fifty percent higher than fees charged by towing companies in the municipality from which the vehicle was towed. Ibid.; N.J.A.C. 13:45A-31.5(a)(1) to (2).

The Director has promulgated regulations establishing a schedule of permitted services for non-consensual towing and storage. Under the regulations, a towing company can charge fees for two types of tows: (1) a basic tow, and (2) a tow following

an accident. N.J.A.C. 13:45A-31.4(a). A "[b]asic tow" is defined as the non-consensual towing of a vehicle that has not been involved in an accident and all "ancillary services," such as hooking up the vehicle to the tow truck, transporting the vehicle, and issuing documents for the release of the vehicle. N.J.A.C. 13:45A-31.2. Towing companies can charge only a flat fee for a basic tow. N.J.A.C. 13:45A-31.4(a)(1).

When towing a vehicle involved in an accident, companies can charge for additional services listed in the regulations, provided that those services are "actually performed." N.J.A.C. 13:45A-31.4(a)(2). For example, a company can charge a flat "administrative fee" if the company's employees have to make more than three trips to the stored vehicle. N.J.A.C. 13:45A-31.4(a)(2)(xii).

The Towing Act then declares that

> [i]t shall be an unlawful practice for any . . . towing company that provides non-consensual towing services: . . . (1) [t]o charge a fee for a . . . towing or related storage service not listed on the schedule of services for which a fee may be charged as established by the [D]irector except as may be permitted by the [D]irector by regulation; or (2) [t]o charge an unreasonable or excessive fee[.]
>
> [N.J.S.A. 56:13-16(f).]

The Towing Act also states that any violation of its provisions "is an unlawful practice and a violation of [the CFA]." N.J.S.A. 56:13-21(a). The Towing Act further provides:

> In addition to any penalties or other remedies provided in [the CFA], the [D]irector may order a towing company that has billed a consumer for any non[-]consensual towing or related storage an amount determined by the [D]irector to be unreasonable to reimburse the consumer for the excess cost with interest.
>
> [N.J.S.A. 56:13-21(b).]

Finally, the Towing Act imposes several requirements on towing companies. Those requirements include: (1) prescribed business hours for storage facilities so that owners can pick up their vehicles, including "reasonable accommodations for after-hours release of stored motor vehicles," N.J.S.A. 56:13-15(a)(1), (b); (2) record-keeping and making those records available to the Division, N.J.S.A. 56:13-17; and (3) maintaining minimum levels of liability insurance, N.J.S.A. 56:13-12.

### (a) The Amendment to the Powers of Municipalities to Regulate Towing

Before the enactment of the Towing Act, municipalities had authority to adopt ordinances or resolutions to regulate towing companies. N.J.S.A. 40:48-2.49 to -2.54. Municipalities were authorized to: (1) establish "schedule[s] of fees or other charges" that towing companies could charge, N.J.S.A. 40:48-2.49(a); (2)

designate a municipal officer or agency to enforce the ordinance or resolution, N.J.S.A. 40:48-2.49(c); and (3) adopt a procedure to receive complaints and resolve disputes arising from the towing and storage of motor vehicles, N.J.S.A. 40:48-2.54(b).

When the Legislature enacted the Towing Act, it also amended the statutory authority of municipalities to regulate towing of motor vehicles. N.J.S.A. 40:48-2.49. Specifically, that amendment clarified that the Towing Act applied to all municipal towing ordinances and regulations. Ibid. In addition, the amendment stated that the charges for towing services established by municipalities were limited by the schedule of towing and storage services established by the Director under the Towing Act. Ibid. In that regard, N.J.S.A. 40:48-2.49 was amended to include the following provision:

> Nothing in this section shall be construed to authorize a municipality to establish charges for services that are not included in the schedule of towing and storage services for which a towing company may charge a service fee established by the Director of [the Division of] Consumer Affairs pursuant to [the Towing Act]. Nothing in this section shall be construed to exempt an operator from complying with the requirements of [the Towing Act].

## 2. The CFA

As already noted, the Towing Act expressly states that any violation of that Act "is an unlawful practice and a violation of [the CFA]." N.J.S.A. 56:13-21(a).

The CFA "provides relief to consumers from 'fraudulent practices in the market place.'" Lee v. Carter-Reed Co., 203 N.J. 496, 521 (2010) (quoting Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 11 (2004)). It affords a consumer legal relief, equitable relief, treble damages, and counsel fees. N.J.S.A. 56:8-19. To proceed with a private cause of action under the CFA, a consumer must "show that the merchant engaged in an 'unlawful practice,' . . . and that [he or] she 'suffer[ed] [an] ascertainable loss . . . as a result of the use or employment' of the unlawful practice." Lee, 203 N.J. at 521 (quoting N.J.S.A. 56:8-2, -19). Thus, to obtain relief under the CFA, a consumer must prove: "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." Manahawkin Convalescent, LP v. O'Neill, 217 N.J. 99, 121 (2014) (quoting Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009)); see also Dugan v. TGI Fridays, Inc., 231 N.J. 24, 51 (2017) ("An 'unlawful practice' contravening the CFA may arise from (1) an

affirmative act; (2) a knowing omission; or (3) a violation of an administrative regulation.").

An "ascertainable loss" is one that is "quantifiable or measurable" and not "hypothetical or illusory." Lee, 203 N.J. at 522 (quoting Thiedemann v. Mercedes-Benz, USA, LLC, 183 N.J. 234, 248 (2005)). Finally, the consumer need not prove reliance to establish causation under the CFA. Instead, "a consumer merely needs to demonstrate that he or she suffered an ascertainable loss 'as a result of' the unlawful practice." Ibid. (quoting N.J.S.A. 56:8-19).

### 3. The TCCWNA

The TCCWNA applies to contracts, warranties, notices, and signs between a consumer and a "seller, lessor, creditor, lender or bailee." N.J.S.A. 56:12-15. Its purpose "is to prevent deceptive practices in consumer contracts by prohibiting the use of illegal terms or warranties in consumer contracts." Kent Motor Cars, Inc. v. Reynolds & Reynolds, Co., 207 N.J. 428, 457 (2011). In enacting the TCCWNA, the Legislature "did not recognize any new consumer rights but merely imposed an obligation on sellers to acknowledge clearly established consumer rights and provided remedies for posting or inserting provisions contrary to law." Dugan, 231 N.J. at 68 (citation omitted); see also Shelton v. Restaurant.com, Inc., 214 N.J. 419, 432 (2013) (explaining that

18

the TCCWNA's purpose was to strengthen the provisions of the CFA). A plaintiff bringing a claim under the TCCWNA must establish that he or she is an "aggrieved consumer," and the defendant violated a "clearly established legal right" or "responsibility." N.J.S.A. 56:12-15, -17; Dugan, 231 N.J. at 69.

### B. The Legal Issues

Our standard of review of legal issues is de novo. Verry v. Franklin Fire Dist. No. 1, 230 N.J. 285, 294 (2017). Moreover, in Walker and Pisack, where the trial court granted summary judgment motions, we conduct a de novo review, using the same standard as the trial courts. Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014). Accordingly, we determine whether, viewing the facts in the light most favorable to the non-moving party, the moving party has demonstrated that there are no genuine disputes as to any material facts and, therefore, is entitled to judgment as a matter of law. R. 4:46-2(c); Davis, 219 N.J. at 405-06 (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).

#### 1. Whether the Towing Act Requires the Exhaustion of Administrative Remedies

Defendants contend that before a vehicle owner can pursue a claim in court, he or she must exhaust his or her administrative remedies. Defendants then argue that the Towing Act authorizes

the Director to order towing companies to reimburse consumers for unreasonable or excessive fees and costs. N.J.S.A. 56:13-21. Defendants also argue that the Towing Act authorizes the Director to establish regulations. Further, in those regulations the Director requires the parties to use "good faith efforts" to resolve a dispute, and if the parties are unable to reach a resolution, the Director may determine whether unreasonable fees were charged and order the towing company to reimburse the consumer with interest. N.J.A.C. 13:45A-31.4(f). In <u>Walker</u> and <u>Pisack</u>, the trial courts accepted that argument and held that plaintiffs had failed to exhaust their administrative remedies and, therefore, defendants were entitled to summary judgment. Neither court stated whether plaintiffs could refile their complaints after they exhausted the administrative remedies.

The Towing Act does not mandate administrative remedies. The Towing Act itself uses only the word "may." N.J.S.A. 56:13-21(b). Specifically, the provision defining "unlawful practice" states:

> In addition to any penalties or other remedies provided in [the CFA], the [D]irector may order a towing company that has billed a consumer for any non[-]consensual towing or related storage an amount determined by the [D]irector to be unreasonable to reimburse the consumer for the excess cost with interest.

> [N.J.S.A. 56:13-21(b).]

A-2546-16T4

That language is permissive. Moreover, that is not the type of language the Legislature uses to require the exhaustion of administrative remedies before filing suit. See Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 588 (2013) (finding that the Legislature created two categories of disputes under an act by using the word "shall" to indicate mandatory alternative dispute resolution and "may" for permissive).

Without specific statutory authority, the Director cannot create an administrative remedy that would foreclose plaintiff from pursuing a claim in court. See Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 12-13 (2009) (explaining that the head of an administrative agency "may exercise powers that are expressly granted by statute" and that, there, the Legislature granted the agency head "express authority to revoke, or to suspend, licenses").

Furthermore, the regulations under the Towing Act do not create mandatory administrative remedies. At one point in the regulations, the Director uses the word "shall," but later uses the word "may." N.J.A.C. 13:45A-31.4(f). Read in full context, that provision does not create mandatory administrative remedies. Instead, the regulatory provision encourages the parties to act in good faith to resolve any dispute and gives the Director the authority to order a towing company to reimburse the consumer for

any unreasonable or excessive fees or charges. Specifically, the regulations provide:

> If a towing company charges a consumer a fee for a private property or other non-consensual towing service that is disputed by the consumer, the parties shall use good faith efforts to resolve the dispute. If the parties are unable to resolve the dispute and the Director determines the fee to be unreasonable under N.J.A.C. 13:45A-31.5, the Director may order the towing company to reimburse the consumer for an amount equal to the difference between the charged fee and a reasonable fee, plus interest, as calculated pursuant to [these regulations].
>
> [N.J.A.C. 13:45A-31.4(f).]

That regulatory language does not create administrative remedies that preclude an aggrieved vehicle owner from pursuing a claim in court. The word "shall" is used in connection with the direction that the vehicle owner and towing company use good faith efforts to try to resolve a dispute. There is no mandatory language requiring further administrative dispute resolution efforts. See Jersey Cent. Power & Light, 212 N.J. at 588 (quoting Aponte-Correa v. Allstate Ins. Co., 162 N.J. 318, 325 (2000), "Where a statutory provision contains both the words 'may' and 'shall,' it is presumed that the lawmaker intended to distinguish between them, 'shall' being construed as mandatory and 'may' as permissive.").

In addition, the statutory provision that gives the Director the permissive —— "may" —— authority to order a reimbursement also states that it "is an unlawful practice and a violation of [the CFA]" to violate any provision of the Towing Act. N.J.S.A. 56:13-21(a). That statutory provision further provides that the Director's authority to order a reimbursement is "[i]n addition to any penalties or other remedies provided in [the CFA]." N.J.S.A. 56:13-21(b). Consequently, the Legislature contemplated that vehicle owners could file their CFA claims in court, and nothing in the Towing Act or its regulations limits that right.

### 2. Whether Towing Companies Have Derivative Immunity Under the TCA

In <u>Pisack</u>, the trial court held that the towing company and its manager and owner had derivative immunity under the TCA. The court reasoned that because the towing company was directed by the Newark Police to tow plaintiff's illegally parked car, the towing company was effectively "deputized under the law" to perform a governmental function and, therefore, was afforded immunity under the TCA. We disagree.

The TCA creates certain limited exceptions to the sovereign immunity enjoyed by governmental entities. <u>Vanchieri v. N.J. Sports & Exposition Auth.</u>, 104 N.J. 80, 85-86 (1986). Accordingly, the TCA applies to governmental entities and their employees. It

expressly excludes "independent contractors" from the definition of employees. N.J.S.A. 59:1-3. The TCA applies to private entities in limited circumstances only where those private entities act under the control and supervision of a public entity to perform a governmental service. Vanchieri, 104 N.J. at 86; Crystal Ice-Bridgeton, LLC v. City of Bridgeton, 428 N.J. Super. 576, 586 (App. Div. 2012).

Here, Pisack is not complaining about the authority of the police to move her illegally parked car. Instead, she complains about certain of the towing charges. The police did not supervise the towing charges. Moreover, the municipal ordinance allowing towing and storage charges does not insulate from challenge a towing company's actual charges. Indeed, the statute that authorizes municipalities to regulate towing services requires each municipality to provide a dispute resolution procedure, effectively recognizing that towing companies will sometimes overcharge or charge for services that are not permitted. N.J.S.A. 40:48-2.54. Furthermore, Pisack did not sue Newark. She sued a privately-owned towing company that charged her for towing her car.[1]

---

[1] As previously noted, B&C Towing's third-party complaint against Newark was severed. Hence, the order on appeal did not address that complaint, and did not address the $25 administrative fee

In the Towing Act, the Legislature expressly stated that a violation of that Act "is an unlawful practice and a violation of [the CFA]." N.J.S.A. 56:13-21(a). Accordingly, the Legislature recognized that vehicle owners could pursue claims for violations of the Towing Act. The Legislature did not address sovereign immunity or the TCA in the Towing Act. To accept the argument that towers are protected by sovereign immunity would render the Towing Act inapplicable any time the police directed a vehicle to be towed. Such a construction would be inconsistent with the plain language of the Towing Act and undermine its purpose, and is not required by the TCA. Thus, we hold that there is no derivative immunity under the TCA for alleged violations of the Towing Act committed by a privately-owned towing company.

### 3. Whether the Towing Act Limits the Types of Services for Which a Towing Company Can Charge a Fee

As already noted, the Towing Act requires the Director to establish a "schedule" of towing and related storage services for which a towing company may charge a fee in connection with non-consensual towing. N.J.S.A. 56:13-14. The Towing Act then provides that it is an "unlawful practice" for any towing company

---

that B&C Towing collected on behalf of Newark, as opposed to the fee the company collected as its own charge. Hence, we also do not address Newark's administrative fee, an issue not before us.

to charge a fee "not listed on the schedule of services" established by the Director.  N.J.S.A. 56:13-16(f)(1).

The Director has issued a schedule of permitted services. N.J.A.C. 13:45A-31.4.  That schedule provides:

> (a) A towing company that engages in . . . non-consensual towing may charge fees for the following services:
>
> > 1.  Basic tow, which shall be a flat fee; and
> >
> > 2.  In the case of a motor vehicle involved in an accident the following additional services, if actually performed:
> >
> > > i.  Waiting time in excess of 15 minutes, which shall be calculated based upon each 15 minutes spent at the site from which a motor vehicle will be towed, with fewer than 15 minutes rounded up to 15;
> > >
> > > ii. Brush cleaning, including collection of debris that can be picked up by hand, which shall be a flat fee;
> > >
> > > iii. Site clean-up, which shall be calculated based upon the number of bags of absorbent used;
> > >
> > > iv. Winching, which shall be based upon each one-half hour spent performing winching;
> > >
> > > v.  The use of window wrap, which shall be a flat fee;
> > >
> > > vi. Tarping, which shall be a flat fee;

A-2546-16T4

vii. Transmission disconnect, a flat fee, which shall be charged only if a motor vehicle is locked and the towing company is unable to obtain the keys for the motor vehicle;

viii. Use of a flat bed tow truck, a flat fee, which shall be charged if a motor vehicle can be transported only by a flat bed tow truck;

ix. Use of special equipment other than the first tow truck to recover a motor vehicle that cannot be recovered by winching or pieces of a motor vehicle that cannot be moved by hand, which may be both a labor and an equipment charge billed in half-hour increments;

x. Decoupling;

xi. Storage at a towing company's storage facility;

xii. More than three trips to the motor vehicle in storage, which may be invoiced as an administrative fee, which shall be a flat fee; and

xiii. Releasing a motor vehicle from a towing company's storage facility after normal business hours or on weekends, which shall be a flat fee.

[N.J.A.C. 13:45A-31.4(a).]

The regulations also provide that a towing company may charge for "tolls it incurs driving to the site from which a motor vehicle will be towed and while towing the motor vehicle from that site

27

to the towing company's storage facility." N.J.A.C. 13:45A-31.4(c). Finally, the regulations state that "[a] towing company shall not charge any fee for . . . non[-]consensual towing and related storage services not included in [the schedule] above." N.J.A.C. 13:45A-31.4(e).

In short, if a service is not listed on the Director's schedule, a towing company cannot charge for that service. In addition, any fee for a permitted service must be charged consistent with the requirements and limitations in the Towing Act and its regulations.

### 4. Whether Plaintiffs Can Pursue Claims Under the TCCWNA

The parties dispute whether the vehicle owners were consumers within the meaning of the TCCWNA. The parties also dispute whether the bills issued by defendants constitute a "consumer contract" under the TCCWNA.

A "consumer" is defined under the TCCWNA as "any individual who buys, leases, borrows, or bails any money, property or service which is primarily for personal, family or household purposes." N.J.S.A. 56:12-15. "[New Jersey] courts have examined the interaction between the parties and the nature of the contract or other writing in order to determine whether a plaintiff is entitled to relief under the TCCWNA." Dugan, 231 N.J. at 69.

Here, the vehicle owners meet the definition of a consumer. The Legislature defined a vehicle owner under the Towing Act as a "consumer." See N.J.S.A. 56:13-9 ("'Consumer' means a natural person. . . . 'Towing' means the moving or removing . . . of a consumer's motor vehicle that is damaged as a result of an accident or . . . is parked illegally or otherwise without authorization . . . ."); N.J.S.A. 56:13-21(b) (authorizing the Director to order a towing company to reimburse a "consumer" for unreasonable towing charges). Like the Towing Act, the TCCWNA is remedial legislation intended to protect consumers. It is therefore logical to give a consistent construction to terms used in both statutes. Accordingly, if vehicle owners are consumers under the Towing Act, they also should be considered consumers under the TCCWNA.

Furthermore, the word "bails" is applicable to a vehicle owner. A bailment is "a delivery of personal property by one person (the bailor) to another (the bailee)." Black's Law Dictionary 136 (7th ed. 1999). In addition, a "bailee" is someone "who receives personal property from another as a bailment." Ibid. While a bailment is generally established by a contract, a bailment can be created without a formal written contract. See McGlynn v. Parking Auth. of Newark, 86 N.J. 551, 556-59 (1981) (discussing bailments and reasoning that the better approach is to focus on the relationship of the parties in defining the rights and duties

of the parties). Consequently, when towing companies take a vehicle, they are doing so as bailees and vehicle owners are consumers as defined by the TCCWNA.

The TCCWNA does not define "consumer contract." Our Supreme Court, however, has looked to the Plain Language Act, N.J.S.A. 56:12-1 to -13, for an applicable definition. Shelton, 214 N.J. at 438. Under the Plain Language Act, a "[c]onsumer contract" includes "a written agreement in which an individual . . . [c]ontracts for services including professional services . . . [or] [e]nters into a service contract . . . for cash or on credit and the money, property or services are obtained for personal, family or household purposes." N.J.S.A. 56:12-1. Significantly, that definition "includes writings required to complete the consumer transaction." Ibid.

The TCCWNA is "entitled to a broad interpretation to facilitate its stated purpose." Shelton, 214 N.J. at 442. Accordingly, the writing need not be formally labeled as a contract, warranty, notice, or sign to fall within the TCCWNA's ambit. In Shelton, the Court considered whether "a printed announcement" on restaurant gift certificates relating to "the use of the certificates" brought "the transaction within the scope of the TCCWNA." Id. at 441-42. In that regard, the Court concluded

that the printed announcement was a "notice" as contemplated by the TCCWNA. Id. at 442.

The bills issued by the towing companies are consumer contracts and notices within the meaning of the TCCWNA. The regulations to the Towing Act assume that towing companies will issue a "bill" for non-consensual towing services, and that bill "shall include a list of all services provided." N.J.A.C. 13:45A-31.4(i) to (k). Moreover, the regulations require towing companies to keep "[i]nvoices . . . for non-consensual towing services" for three years. N.J.A.C. 13:45A-31.9(a)(1). Accordingly, those bills and invoices act as the "writings required to complete the consumer transaction." N.J.S.A. 56:12-1. Indeed, a vehicle owner given such a bill will rely on that bill as the justification for the services charged.

The inclusion of prohibited charges in the bill "deceives a consumer into thinking that they are enforceable." Dugan, 231 N.J. at 68 (citation omitted). Charges not permitted by the Towing Act violate a "clearly established legal right" or "responsibility." Finally, if the vehicle owner paid for unauthorized services, the owner has suffered an ascertainable loss. Accordingly, towing bills with prohibited charges are the type of deceptive consumer transaction that the Legislature aimed to prevent under the TCCWNA.

### 5. Whether Plaintiffs Have Asserted Certain Claims That Can Be Pursued As Class Actions

Rule 4:32-1 sets forth the requirements for class certification. New Jersey courts have "consistently held that the class action rule should be liberally construed." Dugan, 231 N.J. at 46 (quoting Lee, 203 N.J. at 518). To certify a class, there are "four initial requirements, frequently termed 'numerosity, commonality, typicality and adequacy of representation.'" Id. at 47 (quoting Lee, 203 N.J. at 519). Specifically, Rule 4:32-1(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

If those initial requirements are satisfied, the court then considers whether "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." R. 4:32-1(b)(3).

Predominance exists if "the proposed class is 'sufficiently cohesive to warrant adjudication by representation.'" Dugan, 231

N.J. at 48 (quoting <u>Iliadis v. Wal-Mart Stores, Inc.</u>, 191 N.J. 88, 108 (2007)).  To establish predominance, however, a "plaintiff does not have to show that there is an 'absence of individual issues or that the common issues dispose of the entire dispute,' or 'that all issues [are] identical among class members or that each class member [is] affected in precisely the same manner.'" <u>Lee</u>, 203 N.J. at 520 (alterations in original) (quoting <u>Iliadis</u>, 191 N.J. at 108-09).

Depending on the facts developed after discovery, violations of the Towing Act, as well as the related claims under the CFA and the TCCWNA, may be appropriate for class certification.  For example, claims against a towing company that uniformly charges a relatively modest fee for a service or services not permitted under the Towing Act and its regulations, may be well suited for class certification.  One consumer may not think it worthwhile to pursue such a claim, but if there are hundreds of such aggrieved consumers, a class may be appropriate.  <u>See, e.g.</u>, <u>Bosland</u>, 197 N.J. at 560-61 (explaining that the CFA affords a remedy for plaintiffs of a class with "nominal" claims that otherwise "might go unvindicated").

C.  The Application of Our Holdings to Each Case

1. <u>Walker</u>

In <u>Walker</u>, the trial court granted summary judgment to defendants on the grounds that plaintiff failed to exhaust his administrative remedies and failed to use the dispute resolution procedures afforded by the Director or the municipality. Since we hold that those administrative procedures are not mandatory, we reverse the July 24, 2017 order granting summary judgment to defendants. We remand for further proceedings.

The trial court also held that the $35 administrative fee, challenged by plaintiff, was permissible under the municipality's towing ordinance. Walker's vehicle was not involved in an accident; rather, his vehicle was towed after he was stopped and the police observed that his vehicle was not registered. Under the Towing Act's regulations, an administrative fee is only permitted if a vehicle is towed after an accident and then only if employees of the towing company make more than three trips to the vehicle in storage. N.J.A.C. 13:45A-31.4(a)(2)(xii). Moreover, a municipality does not have the authority to allow charges for services that are not listed under the Towing Act's regulations. <u>See</u> N.J.S.A. 40:48-2.49.

Thus, defendants were not permitted to charge an administrative fee, and that charge violated the Towing Act, the

CFA, and the TCCWNA. On remand, we direct that summary judgment be granted in favor of plaintiff on those individual claims. Walker also asserted that defendants unlawfully failed to release his vehicle after normal business hours as required by the Towing Act and its regulations. The trial court did not address that issue; it shall address the merits on remand. We further direct that Walker be permitted to file a motion to certify a class. Since no record was developed on that issue, we do not address whether a class should be certified.

### 2. Pisack

In Pisack, the trial court granted summary judgment to defendants on four grounds: (1) the TCCWNA was inapplicable because there was no contract between Pisack and B&C Towing; (2) Pisack failed to exhaust administrative remedies before pursuing a court action; (3) the fees charged by B&C Towing were permitted under Newark's towing ordinance; and (4) B&C Towing was entitled to derivative immunity under the TCA. We reverse the January 13, 2017 order granting summary judgment to defendants.

We hold that the TCCWNA is applicable and plaintiff can pursue a claim under that Act. We also hold that plaintiff did not have to exhaust administrative remedies and that B&C Towing and its owners were not entitled to derivative immunity under the TCA. We

also reverse the trial court's decision that the fees charged by B&C Towing were permitted under Newark's towing ordinance.

With regard to the fees charged, Pisack challenged the administrative fee and labor charge. The Towing Act and its regulations only permit a labor charge for a tow following an accident, in which "special equipment" was used to tow the vehicle, or the vehicle was not able to be "recovered by winching." N.J.A.C. 13:45A-31.4(a)(2)(ix). Further, as already noted, the Towing Act's regulations permit an administrative fee only if a vehicle is towed after an accident. Pisack's vehicle was towed because it was parked illegally. Thus, both the labor charge and the administrative fee were charged in violation of the Towing Act, the CFA, and the TCCWNA. Moreover, Newark, as a municipality, does not have the authority to allow a charge for services that are not listed under the Towing Act's regulations. N.J.S.A. 40:48-2.49. We, therefore, remand with the direction that summary judgment be entered in favor of Pisack on those individual claims.

The trial court in Pisack never addressed the question of class certification. Instead, the court denied plaintiff's motion as "moot" because the court had granted summary judgment to defendants. We, therefore, also remand this matter with the direction that the court address plaintiff's motion for class

certification on the merits.  As that issue was not addressed, we express no view as to whether a class should be certified.

### 3. Pellegrino

In Pellegrino, the trial court entered an order holding that plaintiff could pursue her claims only in her individual capacity and not on behalf of a class.  Because that decision was made before Pellegrino was permitted to take any discovery, including class-related discovery, we reverse the portion of the June 5, 2017 order dismissing plaintiff's claims for a class action.  We remand with the direction that the court permit class-related discovery and then allow Pellegrino to file a motion for class certification.  Again, because no record was developed, we do not decide whether a class should be certified.

Because we are remanding the claims in Pellegrino, we give some guidance on the disputed charges.  Plaintiff challenges the yard charge, credit card surcharge, administrative fee, and storage fee overcharge.  The Towing Act and its regulations do not permit a "yard charge" or a "credit card surcharge."  Thus, those charges are violations of the Towing Act, the CFA, and the TCCWNA.

Pellegrino was involved in an accident, and thus an administrative fee and storage fee can be charged, provided the services were "actually performed" in compliance with the Towing Act's regulations.  N.J.A.C. 13:45A-31.4(a)(2).  Accordingly, on

remand the parties will need to engage in discovery concerning those fees.

In summary, all three orders on appeal are reversed and the matters are remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2546-16T4