**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5381-16T3

HENRY SANCHEZ, on behalf of
himself and others similarly situated,

    Plaintiff-Appellant,

v.

FITNESS FACTORY EDGEWATER,
LLC, FITNESS FACTORY ROCKAWAY,
LLC, THE FITNESS FACTORY GROUP,
LLC, and DENNIS CIERI,

    Defendants-Respondents.

_____

> Argued November 15, 2018 – Decided April 4, 2019
>
> Before Judges Simonelli, O'Connor and DeAlmeida.
>
> On appeal from Superior Court of New Jersey, Law Division, Morris County, Docket No. L-2192-15.
>
> Andrew R. Wolf argued the cause for appellant (The Wolf Law Firm, LLC, attorneys; Andrew R. Wolf, Matthew S. Oorbeek, Henry P. Wolfe, and Mark A. Fisher, on the briefs).
>
> Ronald L. Israel argued the cause for respondents (Chiesa Shahinian & Giantomasi PC, attorneys; Ronald

L. Israel, Daniel D. Barnes, and Brigitte M. Gladis, on the briefs).

PER CURIAM

This appeal involves a health club membership contract. Plaintiff Henry Sanchez filed a class action against defendants Fitness Factory Edgewater, LLC, Fitness Factory Rockaway, LLC, The Fitness Factory Group, LLC and Dennis Cieri, alleging the imposition of an initiation fee violated the Retail Installment Sales Act (RISA), N.J.S.A. 17:16C-1 to -61, permitting him to proceed with a private right of action under the Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA), N.J.S.A. 56:12-14 to -18, and the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20.[1] The trial court dismissed the claims pursuant to Rule 4:6-2(e). For the reasons that follow, we affirm.

The membership contract granted plaintiff unlimited use of the health club facility, including the exercise room, group fitness, equipment, locker rooms, and sauna. The membership contract was for a twenty-four month term and gave

___

[1] Plaintiff also alleged the initiation fee violated the Health Club Services Act (HCSA), N.J.S.A. 56:8-39 to -48, and other alleged violations including defendant's failure to provide a total cash price figure in the contract, utilize the adequate font and sizing for certain contractual provisions, and charging certain penalty fees, as the basis for additional claims under the TCCWNA. However, plaintiff has conceded that our Supreme Court's holding in Spade v. Select Comfort Corp., 232 N.J. 504 (2018), issued after he filed this appeal, precludes him from proceeding with these HCSA claims under the TCCWNA.

2

plaintiff the option to pay his membership fee in a lump sum or make monthly payments of $39.99, plus tax. The membership contract also imposed a $29.99 initiation fee if plaintiff opted to pay monthly. At the conclusion of the twenty-four month term, plaintiff had the option to terminate his membership without penalty, or continue as a member on a month-to-month basis. Plaintiff elected to pay his membership fee on a monthly basis and paid the $29.99 initiation fee. Plaintiff terminated his membership in accordance with the membership contract without penalty.

Plaintiff claimed the initiation fee is not authorized by RISA, and he suffered a cognizable injury under the TCCWNA by paying the fee. Plaintiff also claimed that requiring payment of the initiation fee is an unconscionable commercial practice under the CFA. These claims rest on the predicate that the membership contract is subject to RISA. Thus, the issue is whether the membership contract is a retail installment contract subject to RISA, such that plaintiff's claims are legally tenable and should have survived a <u>Rule</u> 4:6-2(e) motion to dismiss. Our review of this issue is de novo. <u>Watson v. Dep't of Treasury</u>, 453 N.J. Super. 42, 47 (App. Div. 2017).

The Legislature enacted RISA "to protect consumers from overreaching by others, to protect consumers from overextending their own resources and also

3

to promote the availability of financing to purchase various goods and services." Perez v. Rent-A-Center, Inc., 186 N.J. 188, 205 (2006) (quoting Girard Acceptance Corp. v. Wallace, 76 N.J. 434, 439 (1978)). The Legislature's primary focus was usurious interest rates, and to "protect consumers from themselves and rapacious sellers." Id. at 218; see also Turner v. Aldens, Inc., 179 N.J. Super. 596, 602 (App. Div. 1981) ("We have no doubt that the evil sought to be remedied by N.J.S.A. 17:16C-1 [to -61] is the charging of excessive interest to New Jersey consumers"). RISA thus "prescribe[s] the general form that retail installment contracts should take, N.J.S.A. 17:16C-21 to -25; require[s] certain financial disclosures, N.J.S.A. 17:16C-27; detail[s] prohibited practices, N.J.S.A. 17:16C-35 to -39; and impose[s]" a "cap on the time price differential (interest) chargeable in connection with a sale," N.J.S.A. 17:16C-41. Perez, 186 N.J. at 205.

As the initiation fee here is not one expressly authorized by RISA, assuming the statute applies, the fee would be a violation. N.J.S.A. 17:16C-50. Because RISA does not afford buyers with a private right of action, see N.J.S.A. 17:16C-56, plaintiff's alleged RISA violation serves only as a predicate for his claims under the TCCWNA and CFA, which permit a private right of action for

4

the violation of the rights of consumers.  N.J.S.A. 56:12-17 (TCCWNA); N.J.S.A. 56:8-19 (CFA).

The TCCWNA applies to contracts, warranties, notices, and signs between a consumer and a "seller, lessor, creditor, lender or bailee."  N.J.S.A. 56:12-15. "Its purpose 'is to prevent deceptive practices in consumer contracts by prohibiting the use of illegal terms or warranties in consumer contracts.'"  Pisack v. B & C Towing, Inc., 455 N.J. Super. 225, 241 (App. Div. 2018) (quoting Kent Motor Cars, Inc. v. Reynolds & Reynolds, Co., 207 N.J. 428, 457 (2011)).  "In enacting the TCCWNA, the Legislature 'did not recognize any new consumer rights but merely imposed an obligation on sellers to acknowledge clearly established consumer rights and provided remedies for posting or inserting provisions contrary to law.'"  Ibid. (quoting Dugan v. TGI Fridays, Inc., 231 N.J. 24, 68 (2017)).  Plaintiff thus seeks to use the TCCWNA to provide a remedy for the purported RISA violation, taking advantage of the private right of action afforded by the TCCWNA, N.J.S.A. 56:12-17.

"The CFA provides relief to consumers from 'fraudulent practices in the market place.'"  Pisack, 455 N.J. Super. at 240 (quoting Lee v. Carter-Reed Co., 203 N.J. 496, 521 (2010) (citation omitted)).  The CFA permits a person aggrieved by prohibited, unconscionable commercial practices, N.J.S.A. 56:8-

2, to bring an action in Superior Court.  N.J.S.A. 56:8-19.  "To proceed with a private cause of action under the CFA, a consumer must 'show that the merchant engaged in an "unlawful practice," . . . and that [he or] she "suffer[ed] [an] ascertainable loss . . . as a result of the use or employment" of the unlawful practice.'"  Pisack, 455 N.J. at 240 (alterations in original) (quoting Lee, 203 N.J. at 521 (quoting N.J.S.A. 56:8-2, -19)).

Plaintiff alleges that the membership provided by the membership contract is "merchandise" within the CFA's statutory definition, N.J.S.A. 56:8-1, and the charging of an initiation fee, a violation of RISA, is an unlawful commercial practice sufficient to proceed with a private right of action under the CFA.  N.J.S.A. 56:8-19.

In Mellet v. Aquasid, LLC, 452 N.J. Super. 23, 30 (App. Div. 2017), we held that "[h]ealth club members are not in the category of consumers RISA is designed to protect, because these contracts do not involve the sale of goods."  Plaintiff's argument to the contrary, that RISA's very definition of retail installment contracts includes installment contracts for "goods or services," N.J.S.A. 17:16C-1(b), is specious.  Even if RISA applies to some pure services contracts, coverage of the membership contract would fall outside the purpose

of the statute, see Perez, 186 N.J. at 209, where there is no charged interest and the membership contract itself is arguably not a true installment contract.

Our holding in Mellet, that RISA does not apply to health club membership agreements because they do not involve the sale of goods, 452 N.J. Super. at 30, was largely derived from our Supreme Court's decision in Perez and the analysis of RISA's purpose therein.

RISA defines a retail installment contract, one covered by the Act's protections, as:

> [A]ny contract, other than a retail charge account or an instrument reflecting a sale pursuant thereto, entered into in this State between a retail seller and a retail buyer evidencing an agreement to pay the retail purchase price of goods or services, which are primarily for personal, family or household purposes, or any part thereof, in two or more installments over a period of time. This term includes a security agreement, chattel mortgage, conditional sales contract, or other similar instrument and any contract for the bailment or leasing of goods by which the bailee or lessee agrees to pay as compensation a sum substantially equivalent to or in excess of the value of the goods, and by which it is agreed that the bailee or lessee is bound to become, or has the option of becoming, the owner of such goods upon full compliance with the terms of such retail installment contract.
>
> [N.J.S.A. 17:16C-1(b) (emphasis added).]

The term "'[s]ervices' means and includes work, labor and services, professional and otherwise which are primarily for personal, family or household purposes but does not include services which are subject to the 'Home Repair Financing Act,' and insurance premiums financing which is subject to the 'Insurance Premium Finance Company Act.'"  N.J.S.A. 17:16C-1(s).  Thus, the plain language of RISA's definitions of a retail installment contract and services do not facially preclude coverage of health club membership agreements.

Nevertheless, in Mellet, the defendant argued, much like the defendants here, that

> RISA does not apply to their membership agreements and Perez controls because the entire premise of the installment sales contract contemplated by RISA is possession and eventual ownership of a specified good by a buyer.  Defendant argue[d] plaintiffs were paying not to eventually own but rather to utilize the gym's facilities and equipment, and, thus, the RISA claim was properly dismissed.
>
> [452 N.J. Super. at 28-29.]

We agreed.  Id. at 29.

Our holding was rooted in the following passage from Perez, in which the Court analyzed the legislative purpose underlying the enactment of RISA:

> In enacting RISA, the stated legislative purpose was protection of the public interest through the regulation of the charges associated with the time sale of goods.

8

By including conditional sales, chattel mortgages, security interests, leases, and similar instruments within RISA's protective ambit, the Legislature signaled that it intended to sweep into the Act as many cognate agreements as possible, even those that did not strictly fall within a denominated category. That broad mandate, along with the well-established notion that remedial statutes like RISA should be liberally construed to achieve their salutary aims, require questions regarding the applicability of the statute to be resolved in favor of consumers for whose protection RISA was enacted.

[Perez, 186 N.J. at 209 (citation omitted).]

We concluded that "[t]he thrust of RISA is to 'protect consumers from themselves and rapacious sellers.' Thus, the Legislature aimed to protect the public interest regarding the sale of goods." Mellet, 452 N.J. Super. at 29 (citation omitted) (quoting Perez, 186 N.J. at 218).

We continued:

Although the Perez Court stated RISA should be construed broadly, the statute itself refers to the following categories: "security agreement, chattel mortgage, conditional sales contract or other similar instrument." N.J.S.A. 17:16C–1(b). We fail to see how a health club membership agreement is similar to any of the enumerated instruments. Health club members are not in the category of consumers RISA is designed to protect, because these contracts do not involve the sale of goods. For these reasons, we agree with the trial judge RISA does not apply and affirm dismissal of that count of plaintiffs' complaint.

9

[Id. at 30.]

We adopt the above reasoning of Mellet, itself rooted in the Perez Court's narrow interpretation of RISA, and reify this court's prior holding that RISA does not apply to health club membership contracts. That road leads to the affirmance of the dismissal of plaintiff's TCCWNA and CFA claims. Ibid. (affirming the dismissal of the CFA claim "because it is undisputed plaintiffs' CFA claim is [dependent] upon their RISA claim"); see also id. at 34 (finding plaintiffs' TCCWNA claims derived from RISA "are not independently viable").

For the sake of completeness, we address the inclusion of "services" within RISA's definition of retail installment contracts, N.J.S.A. 17:16C-1(b), as well as plaintiff's various arguments as to why the membership contract falls under the purview of RISA.

To restate for convenience, RISA defines a retail installment contract as:

> [A]ny contract, other than a retail charge account or an instrument reflecting a sale pursuant thereto, entered into in this State between a retail seller and a retail buyer evidencing an agreement to pay the retail purchase price of goods or services, which are primarily for personal, family or household purposes, or any part thereof, in two or more installments over a period of time. This term includes a security agreement, chattel mortgage, conditional sales contract, or other similar instrument and any contract for the bailment or leasing of goods by which the bailee or lessee agrees to pay as compensation a sum substantially equivalent to or in

excess of the value of the goods, and by which it is agreed that the bailee or lessee is bound to become, or has the option of becoming, the owner of such goods upon full compliance with the terms of such retail installment contract.

[N.J.S.A. 17:16C-1(b) (emphasis added).]

Nevertheless, the Perez Court found that,

[t]he first sentence of the Act describes a covered sale. Briefly, the contract must be entered into between a retail seller and a retail buyer; it must evidence an agreement to pay the retail purchase price of goods in installments; and the goods must be for personal, family or household use.

[Perez, 186 N.J. at 205-06 (emphasis added).]

And, in its wake, we held in Mellet that "the Legislature aimed to protect the public interest regarding the sale of goods." 452 N.J. Super. at 29 (emphasis added).

Plaintiff argues, and we agree, that there has been no analysis of whether the inclusion of "services" falls within in the statutory definition of retail installment contract. N.J.S.A. 17:16C-1(b). An interpreting court "should try to give effect to every word of the statute, and should not assume that the Legislature used meaningless language." Medical Soc'y of N.J. v. N.J. Dep't of Law and Pub. Safety, 120 N.J. 18, 26 (1990). Further, "[t]he [interpreting] court should strive for an interpretation that gives effect to all of the statutory

provisions and does not render any language inoperative, superfluous, void, or insignificant." G.S. v. Dep't of Human Servs., 157 N.J. 161, 172 (1999).

In addition, the second sentence of the statutory definition of retail installment contract, "[t]his term includes a security agreement, chattel mortgage, conditional sales contract or other similar instrument[,]" N.J.S.A. 17:16C-1(b), is not an exhaustive list of installment contract types, wherein the list only refers to contracts for the installment sale of goods. To the contrary, the statutory use of the term "includes" indicates an "illustrative and not limitative function of the examples given[.]" Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 577 (1994) (quotation omitted); see also Black's Law Dictionary 880 (10th ed. 2014) ("The participle including typically indicates a partial list"). The fact that the exemplary list does not contain installment contracts for services does not therefore exclude the possibility thereof.

Under the above principles of statutory interpretation, the inclusion of "services" within the statutory definition of retail installment contract cannot be simply disregarded. That is perhaps especially true given the legislative intent, as acknowledged by the Perez Court,

> to sweep into the Act as many cognate agreements as possible, even those that did not strictly fall within a denominated category . . . along with the well-established notion that remedial statutes like RISA

should be liberally construed to achieve their salutary aims, requir[ing] questions regarding the applicability of the statute to be resolved in favor of consumers for whose protection RISA was enacted.

[186 N.J. at 209 (citation omitted).]

See also Mellet, 452 N.J. Super. at 29.

Nevertheless, even assuming the above to be valid, the membership contract does not fall within the ambit of RISA. While the plain language of RISA dictates that its coverage includes some services contracts, the services contract must still be a true retail installment contract. See N.J.S.A. 1:1-1 ("In the construction of the laws and statutes of this state . . . words and phrases shall be read and construed with their context").

The membership contract is not a retail installment contract merely because it is billed monthly, as it contains no financing arrangement between the parties, the very thrust behind the enactment of RISA. See Turner, 179 N.J. Super. at 602 ("the evil sought to be remedied by [RISA] is the charging of excessive interest to New Jersey consumers").

In Section A of Perez, 186 N.J. at 202-05, the Court examined the impetus behind the enactment of RISA, and recognized that, prior to RISA's enactment, "the law treated the taking of interest in connection with the sale of goods as entirely different from the taking of interest on a loan of money per se." Id. at

202. In essence, the latter was regulated, while the former (the sale of goods) was not:

> In fact, the charges associated with the credit sale of goods went generally unregulated up until the 1950s. At that point, in response to the drumbeat of scholarly criticism and consumer complaints, some states, including New Jersey, recognized that the credit sale of goods required regulation and began to adopt retail installment sales acts that set interest rate limits on credit sales transactions. . . .

> Like other state initiatives, New Jersey's RISA, which became law in 1960, was "part of a package of laws designed to protect consumers from overreaching by others, to protect consumers from overextending their own resources and also to promote the availability of financing to purchase various goods and services."

> [Id. at 204-05 (quoting Girard, 76 N.J. at 439).]

Thus, to fall within RISA's purview, a contract for the sale of goods or services must involve financing. The purpose in enacting RISA was to extend the law's protections from only the realm of interest on loans of money into the ever-growing world of financing involved in the purchase of consumer goods and services. Id. at 202-05. Absent such financing, a contract is not the sort that RISA was enacted to cover and is not subject to its restrictions.

The issue was touched on, and that same conclusion reached, in the unpublished opinion in Venditto v. Vivint, Inc., No. CIV. A-14-4357, 2015 U.S.

DIST. LEXIS 26320 (D.N.J. Mar. 2, 2015), where the federal district court upheld the dismissal of the plaintiff's RISA-predicated claims for failure to demonstrate that the subject alarm monitoring services contract was an installment sale of that service because it lacked a financing arrangement:

> To the extent [c]ount [o]ne is premised on the sale of the monitoring services, rather than the sale of any "goods," the [c]ourt finds that [p]laintiff has failed to allege sufficient facts to nudge any such claim across the line from conceivable to plausible. In particular, [p]laintiff has failed to allege sufficient facts that would allow the [c]ourt to draw the reasonable inference that [d]efendant's ongoing monitoring services, billed monthly, amount to an installment sale of that service. "RISA was one of several laws designed to protect consumers from over-reaching by others, to protect them from over-extending their resources, and to promote the availability of financing to purchase various goods and services." Green v. Cont'l Rentals, 292 N.J. Super. 241, 252 (Ch. Div. 1994) (citing Girard *[76 N.J. at 439]). There are no facts alleged in the [s]econd [a]mended [c]omplaint suggesting any type of financing arrangement between the parties for the monitoring services. . . .
>
> In light of the foregoing, [p]laintiff has failed to allege sufficient facts that would allow the [c]ourt to draw the reasonable inference that the misconduct alleged in [c]ount [o]ne constitutes a violation of RISA.
>
> [Id. at *14-5 (emphasis added) (citing Turner, 179 N.J. Super. at 602).]

A-5381-16T3

While a federal court's decision on a question of New Jersey law is not binding on us, see Kavky v. Herbalife Int'l, 359 N.J. Super. 497, 501 (App. Div. 2003), we find it instructive. Simply put, absent any financing arrangement between the parties here, defendants could not be "rapacious," nor is there the possibility for the sort of "evil," usurious interest rates, that the Legislature sought to protect against in enacting RISA.

Plaintiff's arguments that the membership contract is subject to RISA are unpersuasive. For example, plaintiff attempts to distinguish Mellet by arguing that the membership contract contains an acceleration clause, which provides that upon default the entire membership fee would become due and owing, and charges an initiation fee for the monthly contract, where the contract in Mellet did not. Plaintiff's argument does not address the lack of the option of ownership of a good or financing, the hallmarks of retail installment contracts. See, e.g., Perez, 186 N.J. at 207. Further, plaintiff's claim is flawed because the Mellet decision acknowledged that the plaintiff was charged, upon default, "three months of late fees, a collection fee, administrative fee, and fifteen months of dues." Mellet, 452 N.J. Super. at 26. However, the decision does not mention payment of an initiation fee at the contract's inception.

A-5381-16T3

Plaintiff also cites a series of out-of-state cases in which the courts purportedly labeled health club contracts as retail installment contracts. These cases are not binding on us. Meadowlands Basketball Assoc. v. Director, Div. of Taxation, 340 N.J. Super. 76, 83 (App. Div. 2001). Further, in some cases, the court was not addressing that question on the merits. For example, in Van Vels v. Premier Athletic Center, 182 F.R.D. 500 (W.D. Mich. 1998), the court only addressed the issue of class certification, and, in that case and in Kriger v. European Health Spa, Inc., 56 F.R.D. 104 (E.D. Wis. 1972), the subject matter of the dispute was the fraudulent issue of promissory notes or cash discounts, not the membership contracts themselves.

Accordingly, we hold that RISA does not apply to the membership contract. No matter the merit of including "services" in RISA's definition of a retail installment contract, the Legislature included it. "It is emphatically the province and duty of the judicial department to say what the law is," not what it perhaps should be. Sherman v. Citibank, 143 N.J. 35, 58 (2005) (quoting Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177 (1803)). Finding that the membership contract and similarly situated health club services contracts do not fall within the ambit of RISA because they lack financing arrangements is true

A-5381-16T3

to the legislative intent leading to the Act's enactment while being faithful to the Act's text.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5381-16T3